**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Preetpal Grewal,

        Plaintiff,

    v.

Jonathan W. Cuneo, Charles J. LaDuca, Pamela
Gilbert, Joel Davidow, Michael J. Flannery,
Robert J. Cynkar, Sandra Cuneo, Daniel M. Cohen,
Matthew E. Miller, and Cuneo Gilbert & LaDuca LLP,

        Defendants.

Index No. 13 CIV 6836

---

U.S DISTRICT COURT SDNY

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b) MOTION AND/OR MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO SECOND AMENDED COMPLAINT



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/14/2013

PRO SE
DEC 18

# Table of Contents

I. Introduction.................................................................... 1

II. All Defendants are Subject to this Court's Jurisdiction................................ 2

    A. New York's Long-Arm Statute Establishes Jurisdiction over
the Flannery Defendants.................................................... 3

        1. The Flannery Defendants are Subject to this Court's Jurisdiction as
Partners by Estoppel..................................................... 3

        2. The Flannery Defendants are Individually Subject to this
Court's Jurisdiction.................................................... 5

    B. New York's Long-Arm Statute is Constitutional As Applied to the Flannery
Defendants.................................................................. 8

    C. At a Minimum, the Court Should Defer Ruling on the Jurisdictional Issues until
Plaintiff has an Opportunity for Discovery................................ 9

III. Plaintiff's Claims May be Maintained against the Partners in CGL............... 10

IV. The Complaint States Claims on Which Relief Can be Granted.................... 13

    A. Civil RICO.............................................................. 14

    B. New York Human Rights Law............................................ 18

    C. Breach of Fiduciary Duty................................................ 23

    D. Breach of Contract...................................................... 28

    E. Breach of the Implied Covenant of Good Faith and Fair Dealing.............. 28

    F. Fraudulent Inducement.................................................. 29

    G. Unjust Enrichment...................................................... 31

    I. Unfair Competition...................................................... 32

V. Genuine Issues of Material Fact Exist as to Each of Plaintiff's Claims............ 33

VI. Conclusion.................................................................. 34

# Table of Authorities

**Cases**

*Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 833 N.Y.S.2d 138, 140 (2007)....... 32

*Ads Plus Advertising, Inc. v. Ault*, 928 F.Supp.2d 683 (W.D.N.Y. 2013)................. 4

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)........................ 3

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2001)................................................. 20

*Allstate Ins. Co. v. Aminov*, 2014 WL 527834 (E.D.N.Y. February 7, 2014)............... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................... 13, 29

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–516 (2006)...................................... 22

*Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009).................................. 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................... 13, 29

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)............................. 8

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F.Supp.2d 257 (S.D.N.Y. 2012)... 23

*Bonnist v. USB AG et al.* (S.D.N.Y.)............................................................... 7

*Bresalier v. Immelt, et al.*, 10-cv-01807 (S.D.N.Y.)............................................. 7

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir.2004)......... 31

*Bristol Village, Inc. v. Louisiana Pacific Corporation, et al.*, 12-cv-00263 (W.D.N.Y.)... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)................................... 9

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 76 A.D.3d 310,
N.Y.S.2d 618 (1st Dept.2010)...................................................................... 26

*Chrobak v. Hilton Int'l*, 2008 WL 2305256 (S.D.N.Y. 2008)................................. 9

*Ciccone v. Hersh*, 530 F.Supp.2d 574, 577 (S.D.N.Y. 2008)................................. 23

*Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir. 1994)...................................... 13

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177
(2012).................................................................................................. 32

*DeFalco v. Vernas*, 244 F.3d 286, 305 (2d Cir. 2001)......................................... 14

*Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006)..........................................  20

*Dupree v. Walker*, 1988 WL 112157 (D.D.C. Oct. 30, 1998).................................  11

*Ederer v. Gursky*, 9 N.Y.3d 514, 881 N.E.2d 204 (N.Y. 2007)................................  11

*Equal Employment Opportunity Commission, et al. v. Local 638, et al.,*
71-cv-02877 (S.D.N.Y.)...............................................................................  7

*First Wall St. Capital Corp. v. Int'l Prop. Corp., Ltd*, 1998 WL 338105
(S.D.N.Y. June 24, 1998)..............................................................................  10

*Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F.Supp.2d 226 (S.D.N.Y.
2011)...........................................................................................................  25, 27

*Hanes v. HSBC Bank USA N.A.*, 13-cv-02359 (E.D.N.Y.)...................................  6, 7

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)...............  33

*Henderson v. INS*, 157 F.3d 106, 123 (2d Cir.1998)...........................................  8

*Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350,
612 N.E.2d 699 (1993)..................................................................................  34

*In re Air Cargo Shipping Services Antitrust Litig.*, MDL 1775 (E.D.N.Y.).................  6

*In re Automotive Parts Antitrust Litigation*, 2012-MD-02311 (E.D. Mich.)...............  7, 8, 12

*In re Aluminum Warehousing Antitrust Litig.*, 13-MD-02481 (S.D.N.Y.)..................  7

*In re Citimortgage Inc. Home Modification Program HAMP Contract Litigation,*
11-MD-02274 (S.D.N.Y.)..............................................................................  12

*In re Fengling Liu*, 664 F.3d 367 (2d Cir. 2011)................................................  2

*In re HSBC Bank USA Debit Card Overdraft Fee Litigation*, 13-cv-02451 (S.D.N.Y.)...  6, 7

*In re Ideal Mortgage Bankers, Ltd.*, 2013 WL 6813737 (Bkrtcy. E.D.N.Y. 2013).........  26

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)..............  2

*In re Managed Care Litigation*, 2009 WL 347795 (S.D.Fla. 2009)..........................  18

*In re Merrill Lynch & Co. Inc. Sec. Derivative & ERISA Litig.*, 07-cv-09633 (S.D.N.Y.).  7

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61
(D.Mass. 2005)............................................................................................  18

*In the Matter of Argyle Realty Associates v. New York State Division of Human Rights,* 65 A.D.3d 273, 283 (2d Dep't 2009)................................................................. 22

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945)................................. 9

*Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181 (2d Cir. 1998)............................ 2

*JLG Architectural Products, LLC v. WDF, Inc.,* 87 A.D.3d 681, 928 N.Y.S.2d 750 (2d Dept. 2011)....................................................................................... 5

*Johnson v. Nextel Communications, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011).............. 23

*Kapsis v. American Home Mortgage Servicing Inc.,* 923 F.Supp.2d 430 (E.D.N.Y. 2013) 29

*Kaye v. Grossman,* 202 F.3d 611 (2d Cir. 2000)............................................. 31

*Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268 (2d Cir. 2009)........................ 19

*Lucente v. International Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002)......... 29

*Meinhard v. Salmon,* 164 N.E. 545 (N.Y. 1928)............................................. 25

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013)... 19

*Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir. 1983)................................ 14

*Murr v. Capital One Bank (USA), N.A.,* 13-cv-01091 (E.D.N.Y.).......................... 7

*N.A. Lambrecht v. O'Neal et al.,* 09-cv-08259 (S.D.N.Y.)................................. 7

*N.A. Lambrecht v. O'Neal et al.,* 08-cv-06582 (S.D.N.Y.)................................. 7

*Philps v. Stomber,* 11-cv-07271 (S.D.N.Y.).................................................. 7

*Prohealth Care Associates, LLP v. April,* 4 Misc.3d 1017(A), 2004 WL 1872915, at *5 (N.Y.Sup. Aug. 18, 2004)....................................................................... 25

*Queen v. Schultz,* 888 F.Supp.2d 145 (D.D.C. 2012)....................................... 11

*Rosenblatt v. Bivona & Cohen, PC,* 969 F.Supp. 207, 215 (S.D.N.Y. 1997).............. 21

*Rossner v. United States,* No. 01-cv-1859 (S.D. Florida)................................... 15

*Roy Export Co. Establishment v. Columbia Broad. Sys.,* 672 F.2d 1095 (2d Cir. 1982)........... 32

*Rubinbaum LLP v. Related Corporate Partners V, L.P.,* 154 F.Supp.2d 481, 486 (S.D.N.Y.2001)..................................................................................... 3

*S.E.C. v. Straub,* 921 F. Supp. 2d 244, 251 (S.D.N.Y. 2013)................................ 3

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)................................ 14

*SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 940 N.Y.S.2d 525, 963 N.E.2d 1226 (2012)...................................................... 8

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)............ 14

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996)...... 16

*State of New York Workers' Compensation Bd. v. Madden*, 38 Misc.3d 1229(A), 967 N.Y.S.2d 870 (N.Y.Sup. 2013)................................................................. 25

*Stewart v. Adidas*, 1997 WL 65904 (S.D.N.Y. 1997)......................................... 9

*Stone v. Patchett*, 2009 WL 1108596 (S.D.N.Y. 2009)....................................... 5

*Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F.Supp.2d 481, 486 (S.D.N.Y. 2001)................................................................................................ 3

*Textpower v. Cellco Partnership et al.*, 12-cv-02729 (S.D.N.Y. )............................ 7

*The Cuneo Law Group v. Joseph*, No. 08-00253 (D.D.C.).................................... 15

*United States v. 175 Inwood Assocs., LLP*, 330 F.Supp.2d 213, 224 (E.D.N.Y. 2004)...... 11

*United States v. Applins*, 673 F.3d 59, 73 (2d Cir. 2011)..................................... 17

*United States v. Machat*, 2009 WL 3029303 (S.D.N.Y. 2009)................................ 10

*United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999).................................. 16

*Verizon New York Inc., et al. v. Global Naps, Inc. et al.*, 07-cv-04459 (E.D.N.Y. )......... 7

*Welk-Ko Fabricators Inc. et al. v. Goldman Sachs Group, et al.*, 2014-cv-00159 (S.D.N.Y.).................................................................................................. 7

*Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)............ 19, 22

**Statutes and Rules**

18 U.S.C. § 1503.................................................................................. 16

18 U.S.C. § 1341.................................................................................. 16

18 U.S.C. § 1343.................................................................................. 16

18 U.S.C. §1961................................................................................... 16

Fed. R. Civ. Pro. 4(k)(1)(a) ................................................ 2

Fed. R. Civ. Pro. 8(d)(3) ................................................ 18

Fed. R. Civ. Pro. 12(b)(6) ................................................ 13

N.Y. Cons. Laws Art, 39, § 27 ................................................ 4, 5

N.Y. Partnership Law § 26 ................................................ 11

NYC Admin. Code § 8-101 *et seq.* ................................................ 18, 19

New York State's Executive Law § 296(1) ................................................ 18

Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) ............ 19

DC Stat. § 29-603.06(c) ................................................ 10, 11, 12

DC Stat. § 29-604.08(b) ................................................ 12

**Other Authorities**

NYCLA Ethics Opinion 742 (April 16, 2010) ................................................ 2

## I. Introduction

This is a case about a powerful Washington D.C. attorney and self-proclaimed champion of civil rights who, together with his partners, illegally squeezed out the Plaintiff, an Indian national whom they had induced to become a partner in their firm. In the course of their scheme, Defendants threatened and intimidated Plaintiff, engaged in gross acts of discrimination, violated her rights as a partner in the firm, interfered with her opportunities to obtain other work, and deprived her of her means of livelihood. For a period of years Plaintiff worked grueling hours; sought in good faith to bring business to the firm; and devoted herself wholeheartedly to the loyal service of Cuneo and CGL. In return, Defendants cast Plaintiff aside and expropriated for themselves the value that she had brought to the firm. Plaintiff seeks restitution, compensatory and punitive damages, injunctive and/or declaratory relief, and an accounting for the value of her partnership interest.

During the course of this litigation, Defendants Joel Davidow, Michael Flannery, Daniel Cohen, Sandra Cuneo, Robert Cynkar, and Matthew Miller submitted affidavits under oath and penalty of perjury stating that they are not "partners", but rather are "salaried employees". Based on these affidavits, Plaintiff amended her complaint to allege a claim under Racketeering Influenced and Corrupt Practices Act. As amply demonstrated in the Complaint, and as further supported herein, individual Defendants Jonathan W. Cuneo, Pamela Gilbert and Charles J. LaDuca have persistently, over a course of years, misrepresented contract attorneys as "partners" in numerous court filings made under oath or penalty of perjury. Defendants submitted these fraudulent representations in an effort to mislead the courts, extract unearned fees from clients, misappropriate funds from co-counsel, and induce Plaintiff to expect that she would be treated with the fairness partners owe to one another – an expectation that was all too harshly

disappointed when Defendants squeezed her out and commandeered for themselves the value she had contributed to the firm.

Defendants have now filed a motion to dismiss the complaint and/or motion for summary judgment. Plaintiff opposes the motions for the reasons set forth below.[1]

## II. All Defendants are Subject to this Court's Jurisdiction

Defendants do not contest this Court's jurisdiction over the law firm CGL or individual defendants Jonathan W. Cuneo, Pamela Gilbert and Charles J. LaDuca. They do, however, argue that the "Flannery" defendants – Michael J. Flannery, Robert J. Cynkar, Sandra Cuneo, Matthew E. Miller, Daniel M. Cohen and Joel Davidow cannot properly be required to answer in this Court to the allegations in the Complaint.

Under Federal Rule 4(k)(1)(A), this Court may exercise jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."[2] This Court's jurisdiction thus depends on (a) the requirements of New York law regarding personal jurisdiction, and (b) the requirements of the Due Process Clause.

At this stage of the proceeding, Plaintiff's burden is to make a prima facie showing of personal jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). To make a prima facie showing, the plaintiff needs only to plead in good faith and to make "legally sufficient allegations" of jurisdiction. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d

---

[1] Defendants' Memorandum in Support insinuates that Plaintiff engaged in some sort of misconduct in connection with CGL's potential representation of Elizabeth Thomas. This mudslinging is both irrelevant and false: irrelevant because the matter has no bearing on the present motions; false because, as Defendants' own investigator recognized, Plaintiff's actions were ethical and appropriate (see Ross Report pp. 8, 22-24 & n. 21; *In re Fengling Liu*, 664 F.3d 367 (2d Cir. 2011); NYCLA Ethics Opinion 742 (April 16, 2010)).

[2] Defendants do not contest the fact that they were personally served with process – or, in the case of the law firm, that service was properly made on its partners.

181, 184 (2d Cir. 1998). Such allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor. *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993); *Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F.Supp.2d 481, 486 (S.D.N.Y.2001). This Court has substantial discretion in deciding a pretrial motion to dismiss for lack of personal jurisdiction. *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 251 (S.D.N.Y. 2013).

## A. New York's Long-Arm Statute Establishes Jurisdiction over the Flannery Defendants

Jurisdiction is proper over the Flannery Defendants under CPLR § 302(a)(1), which provides for personal jurisdiction over an out-of-state defendant who, "in person or through an agent," "transacts any business within the state or contracts anywhere to supply goods or services in the state," in cases where the cause of action arises from the defendant's contacts with the state. This statute provides for personal jurisdiction over the Flannery Defendants for the following reasons:

### 1. The Flannery Defendants are Subject to this Court's Jurisdiction as Partners by Estoppel

The Complaint specifically documents that CGL has represented each and every one of the Flannery Defendants as a "partner" in the firm. Complaint ¶¶ 12, 223, 224, 226 (Flannery), ¶¶14, 220, 221, 223, 224, 225, 226 (Cynkar); ¶¶ 15, 217, 221, 223, 224, 225, 226 (Sandra Cuneo); ¶¶ 16, 217, 221, 223, 224, 225, 226 (Miller); ¶¶ 13, 217, 218, 219, 220, 221, 222, 224 (Cohen); ¶¶ 11, 221, 223, 224, 226 (Davidow). In support of the motion to dismiss for lack of jurisdiction, these Defendants have now provided this Court with affidavits disclaiming their position as partners and relegating themselves to the status of contract attorneys. Complaint ¶ 229, Exhibit 11. Even if not actual partners, however, they are partners by estoppel.

3

New York partnership law recognizes that a person becomes a partner by estoppel when "by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership." N.Y. Cons. Laws Art, 39, § 27(1); *Ads Plus Advertising, Inc. v. Ault*, 928 F.Supp.2d 683 (W.D.N.Y. 2013).[3] These Defendants do not deny that they were represented as partners in CGL; in fact they acknowledge that they have been referred to in these terms. Complaint ¶ 229, Exhibit 11. Nor do they now disavow or correct these representations. *Id.* They benefited from these representations in two ways. They stood to receive greater compensation under the terms of their contracts which tied their remuneration to the amount of fees awarded in successful cases – awards that would be larger if they were seen as partners rather than as contract attorneys. Complaint ¶¶ 11, 12, 13, 14, 15, 16, 230, Exhibit 1-11. And the statements representing them as partners at CGL enhanced their apparent stature in the legal community.

As partners by estoppel, the Flannery Defendants assumed the obligations of partners with respect to any party who "on the faith of the representation, gives credit" to the partnership. N.Y. Cons. Laws Art, 39, § 27(1).[4] The term "give credit" in this statute is broadly construed, covering forms of detrimental reliance beyond financial dealings. Plaintiff alleges that she relied on these representations to her detriment because she believed, based on these representations, that she and others like her would be treated with the fair dealing that partners owe to one another. Complaint ¶¶ 35, 36-42, 43, 53, 153, 154, 155, 156. On the faith of these

---

[3] The New York rules set forth here and elsewhere in this Memorandum reflect general principles of commercial law. Accordingly, the same result would obtain if the law of the District of Columbia is deemed to control.

[4] Because the representations were made publicly, it does not matter whether the Flannery Defendants directed that the representations be made to Plaintiff personally. N.Y. Cons. Laws Art, 39, § 27(1).

representations, Plaintiff worked grueling hours and refrained from seeking other work at a time when Plaintiff had excellent prospects of moving to a responsible position at another firm. Complaint ¶¶ 35-43, 47-49, 50-53, 58, 77, 82, 84,85, 96.

New York law further provides that "when a person has been thus represented to be a partner in an existing partnership, . . . he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation." N.Y. Cons. Laws Art. 39, § 27(2). The Flannery Defendants are agents of one another, and of the CGL partnership, with regards to persons, such as Plaintiff, who relied on the representation that they are partners in CGL. *JLG Architectural Products, LLC v. WDF, Inc.*, 87 A.D.3d 681, 928 N.Y.S.2d 750 (2d Dept. 2011) (holding parties jointly and severally liable as partners by estoppel).

As partners by estoppel, the Flannery Defendants are subject to the jurisdiction of New York courts under CPLR § 302(a)(1). There is no doubt, and Defendants concede, that CGL transacts business in this state. There is also no doubt that Plaintiff's claims arise out of business that CGL transacted here. Because the law firm and certain of its partners are concededly subject to this Court's jurisdiction, and because partners are agents of one another, the Flannery Defendants are subject to New York jurisdiction also. See CPLR § 302(a)(1) (providing for jurisdiction over persons who "in person *or through an agent*" transact business within the state); *Stone v. Patchett*, 2009 WL 1108596 (S.D.N.Y. 2009) ("[a] Court obtains personal jurisdiction over a defendant regardless of whether it is the defendant himself who transacts business within the state or whether it is the defendant's partner or co-venturer who transacts business within the state.").

**2. The Flannery Defendants are Individually Subject to this Court's Jurisdiction**

Quite apart from their status as partners by estoppel, the Flannery Defendants are individually subject to this Court's jurisdiction. Although each of these Defendants has filed affidavits seeking to minimize their contacts with New York State, Plaintiff has alleged facts sufficient to establish a *prima facie* case establishing their amenability to suit.

Defendant Davidow is an attorney licensed to practice in the State of New York Complaint ¶ 11. Being licensed as an attorney in a state is a solemn obligation carrying with it all of the duties that flow from the privilege to practice law. By seeking and maintaining his qualifications as a New York attorney, Davidow submitted himself to the jurisdiction of New York with respect to all of his professional activities. He purposefully availed himself of the privilege of doing business in New York and manifested a willingness to answer in New York courts for any and all liabilities that flow from his status as a New York attorney. Plaintiffs' claims against Davidow flow from his status as a licensed attorney, including his privilege to practice law in New York State.

In addition, as alleged in the Complaint, each of these Defendants has transacted business in New York by engaging in purposive acts directed to the state. Each of these Defendants is or has been counsel of record or entered appearances in cases pending or recently concluded in state or federal courts in New York:

• Cohen: *In re HSBC Bank USA Debit Card Overdraft Fee Litigation*, 13-cv-02451 (S.D.N.Y.); *Hanes v. HSBC Bank USA N.A.*, 13-cv-02359 (E.D.N.Y.); *In re Air Cargo Shipping Services Antitrust Litig.*, MDL 1775 (E.D.N.Y.). Complaint ¶¶ 13, 218, 219, 222; Affidavit in Support Exhibits C, D, E.

• Sandra Cuneo: *In re HSBC Bank USA Debit Card Overdraft Fee Litigation*, 13-cv-02451 (S.D.N.Y.); *Hanes v. HSBC Bank USA N.A.*, 13-cv-02359 (E.D.N.Y.). Complaint ¶15, Affidavit in Support Exhibit C, D.

• Cynkar: *Murr v. Capital One Bank (USA), N.A.*, 13-cv-01091 (E.D.N.Y.); *In re HSBC Bank USA Debit Card Overdraft Fee Litigation*, 13-cv-02451 (S.D.N.Y.); *Equal Employment Opportunity Commission, et al. v. Local 638, et al.*, 71-cv-02877 (S.D.N.Y). Cymkar is also licensed to practice before the United States Court of Appeals for the Second Circuit, which encompasses New York. Complaint ¶14, Affidavit in Support Exhibit C, D.

• Davidow: *Textpower v. Cellco Partnership et al.*, 12-cv-02729 (S.D.N.Y.); *Philps v. Stomber*, 11-cv-07271 (S.D.N.Y.); *Verizon New York Inc., et al. v. Global Naps,Inc. et al.*, 07-cv-04459 (E.D.N.Y.); *Welk-Ko Fabricators Inc. et al. v. Goldman Sachs Group, et al.*, 2014-cv-00159 (S.D.N.Y.); *In re Aluminum Warehousing Antitrust Litig.*, 13-MD-02481 (S.D.N.Y.). Complaint ¶11, Affidavit in Support Exhibit F, G, H, I.

• Flannery: *Bristol Village, Inc. v. Louisiana Pacific Corporation, et al.*, 12-cv-00263 (W.D.N.Y.); *Bonnist v. USB AG et al.* (S.D.N.Y.). Complaint ¶12, Affidavit in Support Exhibit J, K, L.

• Miller: *Philps v. Stomber*, 11-cv-07271 (S.D.N.Y.); *Bresalier v. Immelt, et al.*, 10-cv-01807 (S.D.N.Y.); *N.A. Lambrecht v. O'Neal et al.*, 09-cv-08259 (S.D.N.Y.); *N.A. Lambrecht v. O'Neal et al.*, 08-cv-06582 (S.D.N.Y.); *In re Merrill Lynch & Co. Inc. Sec. Derivative & ERISA Litig.*, 07-cv-09633 (S.D.N.Y.). Complaint ¶16, Affidavit in Support Exhibit M, N, O.

In addition to entering appearances or participating as counsel in litigation pending in New York State Davidow and Flannery participated actively within New York State in litigation activities for cases filed in other states, including, for example, *In re Automotive Parts Antitrust*

*Litigation*, 2012-MD-02311 (E.D. Mich.), a case filed in Michigan. Complaint ¶¶ 11, 12, 69. Likewise Flannery and Cohen attended meetings in New York to discuss cases not yet filed. Complaint ¶¶12, 13.

Taken as a whole, the jurisdictional allegations in the Complaint establish the *prima facie* case that each and every one of the Flannery Defendants transacted business in New York.

Plaintiff's claims against the Flannery Defendants arise out of the business they transacted in New York State. This "arising out of" standard is satisfied when there is "an articulable nexus" between the claim asserted and the actions that occurred in New York. *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998). Such a nexus exists on the facts alleged here. Plaintiff alleges that she was denied proper compensation and otherwise suffered legal harm in connection with the following cases on which Flannery Defendants worked: *HSBC Bank* (Cohen, Cynkar and Sandra Cuneo); *In re Automotive Parts Antitrust Litigation* (Davidow and Flannery); *N.A. Lambrecht v. O'Neal et al.*, 09-cv-08259 (S.D.N.Y.) (Miller); *N.A. Lambrecht v. O'Neal et al.*, 08-cv-06582 (S.D.N.Y.) (Miller); *In re Merrill Lynch & Co. Inc. Sec. Derivative & ERISA Litig.*, 07-cv-09633 (S.D.N.Y.) (Miller); and a yet-unfiled product liability case brought to the firm by the Plaintiff (Flannery). See, e.g., Complaint ¶¶ 11-16, 61, 67-73, 74-86, 88-90, 91-94, 95-98137-138, 143, 153-155, 160-162, 188-198 238. These contacts are sufficient to establish New York's long-arm jurisdiction over each and every one of the Flannery Defendants. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 940 N.Y.S.2d 525, 963 N.E.2d 1226, 1128 (2012).

## B. New York's Long-Arm Statute is Constitutional as Applied to the Flannery Defendants

The Due Process Clause requires that in order for a state court to take jurisdiction over an out-of-state defendant, there must exist "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard is satisfied here. As partners by estoppel in CGL, each of the Flannery Defendants can reasonably be subjected to New York jurisdiction based on the activity of CGL and its partners in this state. *Chrobak v. Hilton Int'l*, 2008 WL 2305256 (S.D.N.Y. 2008); *Stewart v. Adidas*, 1997 U.S. Dist. LEXIS 5778, *18 n. 5, 1997 WL 65904 (S.D.N.Y.1997). Each of the Flannery Defendants has purposefully availed himself or herself of the privilege of doing business in New York State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Each expects to gain substantial income from activities in this state. As attorneys who practice before the federal courts of New York, they will suffer little inconvenience from having to defend the litigation here. Each is familiar with the rules and practices of federal district courts and of the Southern District of New York. Each is operating under a joint defense agreement along with CGL and its principal partners; none of them has retained individual counsel in this matter. Under these circumstances, together with others described above, it comports with "traditional notions of fair play and substantial justice" that the Flannery Defendants should be required to defend in this tribunal.

## C. At a Minimum, the Court Should Defer Ruling on the Jurisdictional Issues until Plaintiff has an Opportunity for Discovery

The foregoing demonstrates that this Court properly may exercise jurisdiction over all Defendants. If, however, the Court concludes that Plaintiff has failed to meet the burden of establishing a *prima facie* case on jurisdiction as to any Defendant, Plaintiff respectfully requests

that she be permitted to undertake discovery as to jurisdictional facts, either through targeted discovery limited to jurisdictional questions or in the course of merits discovery. Although the Flannery Defendants have provided the Court with self-serving affidavits minimizing their connections with New York State, plaintiff is presently unaware of important facts bearing on jurisdiction, such as the degree of responsibility the Flannery Defendants have over cases in which they have entered appearances in New York, the amount of work done on these cases, the activities these Defendants may have undertaken in New York with regard to cases that have not been filed, and the nature and extent of their other, non-legal activities in or connected with New York State.

Moreover, the issue of personal jurisdiction is bound up with merits issues, in particular the issue of partnership by estoppel. Plaintiff anticipates that merits discovery will reveal information regarding her claim that the Flannery Defendants are partners by estoppel – for example, whether they knew that CGL was representing them to courts as "partners", whether, prior to the instant litigation, they had clarified the nature of their status at CGL, and whether they or CGL engaged in other public or private representations regarding that status. It is appropriate, in cases where resolution of a jurisdictional issue is bound up with the merits, for the Court to defer a ruling on jurisdiction until information about the merits has been developed through subsequent proceedings. *United States v. Machat*, 2009 WL 3029303 (S.D.N.Y. 2009) (recognizing appropriateness of deferring jurisdictional ruling until the merits are developed); *First Wall St. Capital Corp. v. Int'l Prop. Corp., Ltd*, 1998 WL 338105, at *4 n.2 (S.D.N.Y. June 24, 1998) (when questions of jurisdiction and merits are intertwined, jurisdictional decision may be postponed until trial).

### III. Plaintiff's Claims May be Maintained against the Partners in CGL

Defendants argue that certain of Plaintiff's claims against individual Defendants must be dismissed because CGL is a limited liability partnership. In support of this argument they cite to D.C. Stat. § 29-603.06(c), which provides that "[a]n obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, shall be solely the debt, obligation, or other liability of the partnership." This statute, however, does not immunize "partners in a limited liability partnership . . . from liability incurred by the partnership if the assets of the partnership are insufficient to satisfy the liability," *United States v. 175 Inwood Assocs., LLP,* 330 F.Supp.2d 213, 224 (E.D.N.Y. 2004).[5] In any event this statute is not properly interpreted as protecting partners from liability *to others in the partnership.* New York's highest court addressed the question at issue here in *Ederer v. Gursky,* 9 N.Y.3d 514, 881 N.E.2d 204 (N.Y. 2007). A partner in an LLP formed under New York law brought an action against his fellow partners for an accounting. The defendants contested their individual liability, relying on N.Y. Partnership Law § 26, the analog to the provision of D.C. law at issue here.[6] The Court of Appeals, in an extensive and scholarly opinion, rejected the defendants' argument, holding that the limited liability partnership law does not shield a general partner from personal

---

[5] Courts in the District of Columbia look for guidance to the partnership law of New York State. *Dupree v. Walker,* 1988 WL 112157 (D.D.C. Oct. 30, 1998) ("District of Columbia law is identical to New York law relied upon by the . . . court on this point"); *Queen v. Schultz,* 888 F.Supp.2d 145 (D.D.C. 2012) (relying on New York precedent and noting that provisions of D.C. and New York partnership law are "either identical or would lead to the same result.")

[6] In pertinent part, § 26(a) of the New York Partnership Law provides: "no partner of a partnership which is a registered limited liability partnership is liable or accountable, directly or indirectly (including by way of indemnification, contribution or otherwise), for any debts, obligations or liabilities of, or chargeable to, the registered limited liability partnership or each other, whether arising in tort, contract or otherwise, which are incurred, created or assumed by such partnership while such partnership is a registered limited liability partnership, solely by reason of being such a partner."

liability for breaches of the partnership's or partners' obligations to each other. It is likely that the courts of the District of Columbia would follow this precedent from an important commercial state if called upon to interpret the scope of DC Stat. § 29-603.06(c).

Moreover, DC Stat. § 29-604.08(b), not cited by Defendants, provides that "[a] partner may maintain an action against the partnership *or another partner* for legal or equitable relief . . . ." (emphasis supplied). Actions authorized under § 29-604.08(b) include both lawsuits to enforce the "[p]artner's rights under the partnership agreement," and also actions to enforce the "[r]ights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship." Id.

Accordingly, all partners at CGL, whether considered "equity" partners or partners by estoppel, are subject to personal liability to Plaintiff on the relevant causes of action.

In any event, CGL's status as a limited liability partnership does not immunize partners from the consequences of their own conduct. D.C. Stat. § 29-603.06(c) (limitation of liability restricted to "obligation[s] of a partnership"); cf. New York Partnership Law § 26(c) (same). Plaintiff has made detailed, specific allegations of wrongful conduct against the named partners at CGL – Cuneo as the principal attorney in the firm responsible for all the actions undertaken against Plaintiff; and LaDuca and Gilbert with regard to their participation in ousting Plaintiff from her position at CGL. Plaintiff also has alleged or will seek to establish that the Flannery Defendants benefited from the actions of CGL's senior partners and may have been active participants in the scheme. For example, in Plaintiff's place Cuneo appointed his sister Sandra Cuneo to work on *In re Citimortgage Inc. Home Modification Program HAMP Contract Litigation*, 11-MD-02274 (S.D.N.Y.) (Complaint ¶84). Davidow (and his associate Victoria Romanenko) took over Plaintiff's antitrust work on *In re Automotive Parts Antitrust Litigation*,

2012-MD-02311 (E.D. Mich.) (Complaint ¶¶ 11, 67-73). Cuneo designated Flannery to take over Plaintiffs' work in the *In re JPMorgan Mortgage Modification Litigation*, 2011-MD-02290 (D. Mass) (Complaint ¶ 12). Cohen, Cynkar, and Sandra Cuneo took over responsibility overdraft fee cases, where were based on the issues Plaintiff brought to the firm (Complaint ¶¶ 13, 14, 15). Each of these Flannery Defendants personally benefited from being assigned to these matters (Complaint ¶¶ 11-16), and each may have participated in the course of conduct which led to Plaintiff being squeezed out of CGL. It would be premature to release these Defendants from liability on Plaintiff's claims before Plaintiff has had the opportunity to discover the degree of their involvement in the firm's wrongful conduct.

## IV. The Complaint States Claims on Which Relief Can be Granted

Defendants move under Rule 12(b)(6) to dismiss the Complaint on the ground that it fails to state claims on which relief can be granted. In evaluating this motion, the Court must take as true the well-pleaded allegations of a complaint. *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir. 1994). A complaint will be dismissed only if the allegations fail to set forth a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Plaintiffs' Complaint more than satisfies this standard. Far from offering "labels and conclusions," *Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555, or "naked assertions," *Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 557, the Complaint sets forth a detailed, specific, coherent, and convincing account of how Cuneo and other Defendants ousted Plaintiff out of her cases (Complaint ¶¶ 55, 61, 65, 66, 67-72, 78-80, 83-87, 88-90, 96-98, 160-162, 188- 197); squeezed Plaintiff out of her position at CGL (Complaint ¶¶ 111-123); threatened and intimidated her (Complaint ¶¶ 56, 106-111, 112-131,183); deprived her of the economic value of

her contributions (Complaint ¶¶ 1, 55, 66, 71, 73, 88-94, 132-136, 138, 142-143, 146-151, 155, 156, 161, 188, 193); harmed her prospects for future employment (Complaint ¶¶ 138, 163-168, 183, 199-205); impugned her reputation by launching an investigation into perfectly appropriate behavior (Complaint ¶¶ 56, 107, 111, 112-131, 161, 176, 183); mocked, denigrated and demeaned her on the basis of her accent and national origin (Complaint ¶¶ 99-105); threatened her immigration status (Complaint ¶¶ 106, 110, 176, 183, Affidavit in Support Exhibit P); and fraudulently represented contract attorneys as "partners" at the firm in order, *inter alia*, to induce Plaintiff to expend extraordinary efforts on the firm's behalf and not to seek other employment.[7] Complaint ¶¶ 11-16, 33-43, 48-53, 58-60, 62-64, 67, 75-77, 81-82, 85, 88-89, 192, 216-230, 238.

In particular, the Complaint sets forth detailed allegations establishing a plausible entitlement to relief on each of the following claims:

## A. Civil RICO

Plaintiff alleges that she is entitled to recover damages, including treble damages, from individual defendants Cuneo, Gilbert and LaDuca as a result of their violations of the RICO statute.[8] As set forth in the Complaint, and as further substantiated in Plaintiff's Affidavit in

---

[7] Plaintiff is not pursuing her claims of violation of Title VII of the Civil Rights Law, infliction of emotional distress, unlawful threats, or interference with contractual relations.

[8] In order "[t]o establish a RICO claim, a plaintiff must show: '(1) a violation of the statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008) (quoting *DeFalco v. Vernas,* 244 F.3d 286, 305 (2d Cir. 2001)). To establish a violation of 18 U.S.C. § 1962, "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco,* 244 F.2d at 306 (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)). This requires that the plaintiff allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)-(c)).

Support, these Defendants engaged in continuing pattern of racketeering activity by knowingly misrepresenting the status of CGL attorneys in motions and other court filings seeking awards of attorneys' fees in settled class action cases. Complaint ¶¶ 11-16, 33-43, 216-230, Exhibits 1-11. In particular, although the RICO Defendants knew and understood that the attorneys in question were merely salaried employees operating under at-will employment contracts, they fraudulently represented these individuals as "partners" at CGL for the purpose of misleading the courts, misappropriating client funds, usurping fee awards due to co-counsel (*e.g.,* Complaint ¶¶ 33-43, 214, 216, 229, 230, 231, 238, Exhibits 1-11, and inducing Plaintiff and others to remain at the firm and to engage in extraordinary efforts on the firm's behalf. Complaint ¶¶ 47, 48, 51, 52, 58, 62-64, 67-68, 74-77, 82, 84-85, 88-89, 95-96.

The Complaint and documents supporting this Memorandum in Opposition thoroughly document how the RICO Defendants flagrantly misrepresented the status of attorneys at the firm. Complaint ¶¶ 11-16, 33-43, 211-238, Exhibits 1-11. For example, in *Rossner v. United States*, No. 01-cv-1859 (S.D. Florida), Cuneo filed a petition seeking an award of $2,653,206 in fees (Exhibit A to Affidavit in Support). In that filing Cuneo represented under penalty of perjury that attorney Joel Joseph was a "partner" in the firm. Later Cuneo became involved in a dispute with Joseph over a fee. In *The Cuneo Law Group v. Joseph*, No. 08-00253 (D.D.C.) (Exhibit B to Affidavit in Support), Cuneo filed a sworn affidavit declaring that Joseph was a "salaried employee" (and later an "independent contractor"). In other words, when it served Cuneo to pump up Joseph's status in order to increase a fee, Joseph was a "partner"; when it served Cuneo to minimize Joseph's status in order to avoid sharing a fee, he was a "salaried employee".

The RICO Defendants' pattern of misrepresenting the status of court filings, repeated in case after case, constituted violations of three RICO predicate offenses:

• Obstruction of justice under 18 U.S.C. § 1503. Specifically, the Complaint alleges that the RICO Defendants' pattern of filing false fee applications represented corrupt attempts to influence or impede federal judges in the discharge of their duties and to influence, obstruct or impede the due administration of justice. *E.g.*, Complaint ¶¶ 212-238, Exhibits 1-11.

• Mail fraud under 18 U.S.C. § 1341.[9] Specifically, the Complaint alleges that the RICO Defendants concocted a scheme or artifice to defraud or obtain money under false pretenses and used the United States mails in furtherance of this scheme. Complaint ¶¶ 214-226, 227, 228-238, Exhibits 1-11.

• Wire fraud under 18 U.S.C. § 1343. Specifically, the Complaint alleges that the RICO Defendants devised a scheme or artifice to defraud or to obtain money by false or fraudulent representations, and used wire communications in interstate commerce in furtherance of their scheme. Complaint ¶¶ 214-226, 227, 228-238, Exhibits 1-11.

The Complaint alleges that these violations and predicate offenses were part of a pattern of racketeering activity (Complaint ¶¶ 212-238, Exhibits 1-11);[10] that CGL is a RICO enterprise (Complaint ¶ 212, 213, 214, 235, 236, 237)[11]; that Plaintiff was injured in her trade or business

---

[9] The mail and wire fraud statutes require a plaintiff to show that the defendant participated in a scheme to defraud victims of money or property, through the use of the mails or an interstate wire. *United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). "Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, [ ] where and when they took place, and [ ] explain why they were fraudulent." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir.2008).

[10] A "racketeering activity" under 18 U.S.C. § 1961(1) includes, *inter alia*, "any act which is indictable under 18 U.S .C. § 1341 (mail fraud), 1343 (wire fraud), and § 1503 (obstruction of justice". A pattern of racketeering activity "requires at least two acts of racketeering activity ...." 18 U.S.C. § 1961(5).

[11] 18 U.S.C. § 1961 defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Second Circuit further explains that a "RICO enterprise 'is proved by evidence of an

by reason of these violations (Complaint ¶¶ 215, 238); that she relied on the RICO Defendants'

representations that she and others were partners at the firm (Complaint ¶¶ 35, 36-43); and in

reliance on these representations she worked thousands of hours on the firm's behalf and

refrained from seeking other employment, in the expectation – erroneous as it turned out – that

CGL and the RICO Defendants would treat her with the respect and fair dealing that partners

owe to one another. Complaint ¶¶ 33-43, 47-53, 58, 62-64, 67, 75-77, 82, 84, 85, 88-89, 91, 95-

96, 153-156, 238. Plaintiff further alleges that the RICO Defendants' pattern of racketeering was

part of a fraudulent scheme to misappropriate legal fees and that she was injured in her trade or

business when the RICO Defendants, through racketeering and other improper activities,

squeezed her out of her position at the firm. Complaint ¶¶ 215, 238. Plaintiff would not have

remained at CGL – and would not have suffered the subsequent harm of being summarily ousted

from the firm – had she known that the RICO Defendants were engaging in this pattern of illegal

activity.

The RICO Defendants argue that their conduct in representing contract attorneys as

partners was not fraudulent or obstructive of justice, apparently on the basis that courts should be

clever enough to understand that when a law firm represents an attorney as a "partner" the reality

is that the attorney is an employee at will. However, courts cannot be expected to read minds.

Nothing stopped Defendants from honestly disclosing the status of these attorneys. The fact they

failed to do so speaks volumes about their intentions.[12] .

---

ongoing organization, formal or informal, and by evidence that various associations function as a
continuing unit." *Allstate Ins. Co. v. Aminov,* 2014 WL 527834 (E.D.N.Y. February 7, 2014),
quoting *United States v. Applins,* 673 F.3d 59, 73 (2d Cir. 2011).

[12] Defendants' argument that their representations were not deceptive is further belied by the fact
that they provided courts with national surveys of partner billing rates divided into "partner" and
"associate" rates, without alerting the judges that the "partners" at CGL were not really partners
at all (Complaint, Exhibit 7 *Declaration of Charles J. LaDuca in Support of Plaintiff's Motion*

The RICO Defendants complain that Plaintiff is "abusing" the RICO statute by alleging violations against them. The accusation is mysterious given that the very purpose of the RICO law is to penalize people who operate otherwise-legitimate businesses through a pattern of criminal conduct – exactly what Plaintiff alleges occurred here.[13] Equally unavailing is Defendants' assertion that Plaintiff's RICO claims are "abusive" because they overlap other claims for relief. Plaintiff's RICO claims do not replicate her other claims for relief: they depend on different elements of proof (e.g., the requirements of predicate offenses and a pattern of racketeering activity), provide different remedies (treble damages), arise under the law of a different sovereign (federal versus state law), and implement different social policies. In any event, even if the RICO claims did replicate other claims for relief, as they do not, there would be nothing "abusive" about filing them: the federal rules explicitly allow plaintiffs to plead overlapping theories of relief. Fed. R. Civ. P. 8(d)(3).

## B. New York Human Rights Law

Plaintiff alleges that Cuneo and other Defendants violated New York City and State Human Rights law. New York State's Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice [f]or an employer . . . , because of an individual's . . . race, creed, color, [or] national origin, . . . to . . . discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

New York City's Human Rights Law, NYC Admin. Code § 8-107(1) provides that:

---

for an Award of Attorneys' Fees and Reimbursement of Expenses ¶ 52, (relying upon and attaching as Exhibit 4 therein the PricewaterhouseCooper's 2011 Billing Rate & Associate Salary Survey for law firms nationwide).

[13] Cuneo himself is not above making RICO allegations against persons who operate legitimate business enterprises. See In re Managed Care Litigation, 2009 WL 347795 (S.D.Fla. 2009) (insurance companies); In re Pharmaceutical Industry Average Wholesale Price Litigation, 230 F.R.D. 61 (D.Mass. 2005) (pharmaceutical companies).

It shall be an unlawful discriminatory practice. . . [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

Although the New York City law covers conduct also governed by the New York State statute as well as Title VII of the federal Civil Rights Act, it is more protective of employee rights than its counterparts. Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) makes clear that "interpretations of state or federal provisions worded similarly to [NYCHRL] provisions may be used as aids in interpretation only to the extent that the counterpart provisions are viewed 'as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise' and only to the extent that those State- or federal-law decisions may provide guidance as to the 'uniquely broad and remedial' provisions of the local law." *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (reversing district court decision that applied federal standard to NYCHRL claim); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–79 (2d Cir. 2009) (explaining that the Restoration Act "abolish[ed] 'parallelism' between the [NYCHRL] and federal and state anti-discrimination law").

The Complaint sets forth numerous allegations of discriminatory conduct in violation of these statutes. In particular, the Complaint details how Cuneo, in private and in the presence of others, repeatedly denigrated Plaintiff because of her status as an Indian national – mocking her accent (Complaint ¶ 100), claiming she could not be understood (even though Plaintiff is a native English speaker) (Complaint ¶ 101), commenting that "we treat you like a foreigner" (Complaint

19

¶ 103), remarking that "we don't take this girl seriously" (Plaintiff was in her 40's) (Complaint ¶ 102), and demanding, without legal justification, to see Plaintiff's green card at the time Cuneo and other Defendants ousted her from the firm, and investigating Plaintiff repeatedly and issuing unlawful threats. Complaint ¶¶ 99-111. These derogatory comments and discriminatory actions were neither isolated nor sporadic, but rather formed a pervasive background within which Plaintiff had to work on a daily basis – a series of incidents "sufficiently continuous and concerted to have altered the conditions of her working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2001). These allegations state an actionable claim of hostile work environment.

The Complaint also sets forth a plausible claim of discriminatory discharge. Plaintiff alleges that she is a member of a protected class (a foreign national and a person of Indian descent). Complaint ¶¶ 99-111. She claims that her job performance was satisfactory, and that Defendants' failed efforts to accuse her of unethical conduct were merely an excuse to justify ousting her from her position. Complaint ¶¶ 82-87, 111, 129-131. She alleges that she suffered adverse employment action – not only loss of rights while still employed at CGL but also loss of her livelihood when she was terminated. Complaint ¶¶ 1, 139. Especially given the hostile work environment described above, these allegations set forth a plausible claim that her termination occurred under conditions "giving rise to an inference of discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).

Defendants do not deny that Plaintiff's allegations sufficiently set forth claims of discriminatory conduct. They rely instead on technical arguments inconsistent with the remedial and prophylactic spirit of New York's human rights laws. They argue, in particular, that Plaintiff cannot maintain an action under these provisions because she was a partner in GCL. They cannot

be heard to make this argument, however, because they have repeatedly and insistently claimed that Plaintiff was *not* a partner at the firm.[14]

Even if Plaintiff were to be considered a partner for purposes of her human rights law claims, Defendants' arguments would be unavailing. The label "partner" is not determinative of a plaintiff's rights under these statutes; what matters is the actual circumstances under which a person was employed. The cases cited by Defendants are inapposite: they did not involve persons such as Plaintiff who, although represented to the world as a "partner," was treated internally as a subordinate and denied the rights that partners enjoy. Defendants' cases, moreover, arise under New York State law, not the New York City law which (as noted above) is significantly more protective of employee rights.

Properly interpreted in light of their protective purposes, neither the New York State nor the New York City law should be construed to cover non-equity partners who do not enjoy rights of management at their firms. Non-equity partners at law firms are "employees" for purposes of Title VII. *Rosenblatt v. Bivona & Cohen, PC*, 969 F.Supp. 207, 215 (S.D.N.Y. 1997). New York courts would likely adopt at least an equally protective standard in interpreting the state and city human rights laws.

Defendants argue, further, that the New York Human Rights Law does not apply because CGL did not have at least four employees in New York City during the time Plaintiff worked at

---

[14] For example, Defendants submitted sworn affidavits to the effect that all the Flannery Defendants – attorneys similarly situated to Plaintiff – were not partners but rather salaried employees. Complaint Exhibit 11. Defendants' Memorandum in support of the present motions describes Plaintiff as a "relatively junior attorney." Mem. p.23. The Ross Report which Defendants commissioned and rely on here describes Plaintiff as an "associate." Ross Report p. 7.

the firm.[15] This argument is also unavailing. The requirement of four or more employees is not jurisdictional, but rather a measure designed to relieve small firms of some of the burdens of the law. *See In the Matter of Argyle Realty Associates v. New York State Division of Human Rights*, 65 A.D.3d 273, 283 (2d Dep't 2009). It would be bizarre to say that an employee in New York City of a New York-based firm with 20 employees is protected by the human rights statutes but that another employee, situated identically in every other respect, is not entitled to the protection of these laws simply because her employer's principal operations happen to be located five miles away in New Jersey. In both cases the employee is located in New York and should be subject to the same protections. The alternative interpretation would contradict the protective philosophy of the human rights laws, especially the "uniquely broad and remedial' purposes of New York City's law. *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009).

Federal employment discrimination law provides a guide to interpretation here. Title VII applies to employers with fifteen or more employees. 42 U.S.C. § 2000e(b). In *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–516 (2006), the Supreme Court held that the numerosity requirement of Title VII is not jurisdictional. By analogy, the requirement under New York law of four or more employees – which is also not explicitly defined as jurisdictional – should not be interpreted as jurisdictional under New York state or city human rights laws.

Finally, Defendants argue that Plaintiff's human rights law claims must be dismissed as to the Flannery Defendants because Plaintiff makes no specific allegations of discriminatory conduct by them. However, the Complaint alleges that certain of these Defendants acted in concert with Cuneo, Gilbert, and LaDuca to create the firm's hostile work environment. For example, in 2011 Davidow threatened Plaintiff with disbarment on the bogus theory that all

---

[15] Defendants do not deny that CGL has more than 4 employees, but claim that the employees are not located in New York.

antitrust clients that Plaintiff brought to the firm were "the firm's clients" and that if she left and took the clients with her she would be charged with ethical violations. Complaint ¶¶ 61, 62-66, 109.

Moreover, as argued above, the Flannery Defendants are partners by estoppel in CGL and therefore are individually liable for the partnership's violations, including its violations of human rights laws. While Plaintiff does not currently know of discriminatory conduct by all of these Defendants, there remains the possibility that they each participated in the discriminatory conduct displayed by CGL and its principal partners. Plaintiff should be allowed the opportunity to discover whether such conduct occurred.

### C. Breach of Fiduciary Duty

Plaintiff alleges that Defendants breached a fiduciary duty to her by their conduct in depriving her of business opportunities at CGL and squeezing her out of her position there. A claim for breach of fiduciary duty requires: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Communications, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld,* 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).[16] In determining whether a fiduciary relationship exists, courts "typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Ciccone v. Hersh,* 530 F.Supp.2d 574, 577 (S.D.N.Y. 2008). The party reposing trust in another must also "reasonably rely on the other's superior expertise or knowledge." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,* 866 F.Supp.2d 257, 270 (S.D.N.Y. 2012).

---

[16] These cases arising under New York law set forth general rules on fiduciary duty law that would apply in the event that the law of the District of Columbia is deemed applicable to Plaintiff's breach of fiduciary duty claim.

The Complaint sets forth each element of the claim for breach of fiduciary duty: Plaintiff alleges that she was a partner at CGL and Defendants owed her a fiduciary duty (Complaint ¶¶ 33-43, 53, 153); that they breached their duty (Complaint ¶¶ 55-57, 61, 65-66, 70-73, 78-80, 83-87, 90, 92-98, 106-111, 112-136, 154); and that the breach of duty caused harm to the Plaintiff (Complaint ¶¶ 55-57, 69, 70-73, 79, 90, 92-93, 97-98, 112-131, 135-139, 155, 156, 157). These allegations establish a plausible claim of breach of fiduciary duty.

Defendants do not deny that Plaintiff alleges a plausible breach of fiduciary duty claim. Their motion to dismiss is instead premised on the notion that the fiduciary duty allegations are "duplicative" of the breach of contract claims and should be dismissed under a line of cases cited in Defendant's Memorandum. This argument misreads applicable legal doctrine and draws an incorrect conclusion from the case law.

Cases dismissing breach of fiduciary duty claims on grounds that they duplicate contract claims have the following general features: they are often commercial disputes in which the plaintiff has attached a tenuous claim of breach of fiduciary duty onto what is essentially a contract cause of action. In such cases, courts may dismiss the fiduciary duty claim as a means for simplifying the litigation without creating any prejudice for the plaintiff. The theory is that since there is perfect overlap between the fiduciary duty and contract claims, and since the gravamen of the dispute sounds in contract, nothing is sacrificed by eliminating the tagalong fiduciary duty claim.

Defendants, however, read this line of cases for a broader principle, namely that a fiduciary duty claim because cannot stand because it arises out of a contract. This idea – that whenever a fiduciary duty arises out of a contractual relationship, an aggrieved party must vindicate her rights only under a contract theory – is unsustainable as a rule of law. Almost all

fiduciary duties arise out of contracts; as one New York court put it, "many claims for breach of fiduciary duty find their genesis in an initial contractual relationship, whether a trust agreement, a contract to render professional or advisory services or the governing documents of a corporation, partnership or other business entity." *State of New York Workers' Compensation Bd. v. Madden*, 38 Misc.3d 1229(A), 967 N.Y.S.2d 870 (N.Y.Sup. 2013). Defendants' theory would eliminate fiduciary duty claims in such circumstances. But this is obviously not the law: claims for breach of fiduciary duty are routinely brought against trustees, managers of corporations, lawyers, and many others whose relationship with the plaintiff arises out of a contract. *Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F.Supp.2d 226 (S.D.N.Y. 2011) ("the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself"); *Prohealth Care Associates, LLP v. April*, 4 Misc.3d 1017(A), 2004 WL 1872915, at *5 (N.Y.Sup. Aug. 18, 2004) ("The same conduct may constitute both a breach of contract and a breach of a fiduciary duty.").

Plaintiff's claims of breach of fiduciary duty fall in the broader category of cases where the existence of an underlying contract does not defeat an action for breach of fiduciary duty. This case does not involve an ordinary commercial relationship, nor are the claims of breach of fiduciary duty tenuous add-ons that add nothing of substance to the litigation. On the contrary, the claims of fiduciary breach constitute the center of gravity of this case. Indeed, the argument for allowing the fiduciary duty claim to coexist with the contract claim is particularly strong in cases such as this one, involving relationships within a partnership. *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928).

In circumstances such as these, courts allow claims of fiduciary duty to coexist with claims for breach of contract. One reason for doing so is grounded in procedural considerations. Both state and federal rules permit plaintiffs to assert alternative or overlapping claims for relief. It is perfectly permissible for a plaintiff to join a claim for breach of fiduciary duty with one for breach of contract. It would be odd for the courts, after allowing the pleading, to summarily reject one of the claims on the ground that it duplicates another. Accordingly, especially in cases where claims do not perfectly overlap, many federal and state courts allow fiduciary duty claims to coexist with contract claims until the completion of discovery or event later. *In re Ideal Mortgage Bankers, Ltd.*, 2013 WL 6813737 (Bkrtcy. E.D.N.Y. 2013).

Beyond this, it is inappropriate to dismiss a fiduciary duty claim when the overlap with a claim for breach of contract is less than complete. *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 76 A.D.3d 310, 901 N.Y.S.2d 618, 636 (1st Dept. 2010) (holding that relevant fiduciary duties arose from the contract at issue, but that they existed independently of that agreement and thus were not subject to dismissal on duplicity grounds).

This is such a case. Plaintiff alleges, for example, that Cuneo terminated Plaintiff's work on international antitrust cases because he (Cuneo) had had a falling out with another attorney. Complaint ¶¶ 54-55. Plaintiff anticipates that Defendants will deny that such conduct constitutes a breach of contract. Regardless of the validity of Plaintiff's contract arguments, this conduct arguably constitutes a violation of the fiduciary duty. Likewise, the Complaint sets forth numerous instances where Defendants denied Plaintiff profits and benefits which she had a right to expect as a partner in the firm. Complaint ¶¶ 55-57, 66, 70-73, 78-81, 83, 84, 86-87, 90-94, 95-98, 135-136, 138, 155-156. These allegations of oppressive behavior identify breaches of fiduciary duty; but Defendants will likely argue that they do not amount to breaches of contract.

Similarly, Plaintiff alleges that Defendants continued to violate her rights as a partner subsequent to her purported firing on May 7, 2012 – keeping her email account open in order to expropriate her contacts, disparaging her to potential employers, and threatening her immigration status. Complaint ¶¶ 95-98, 106, 110, 135-136, 204. Plaintiff anticipates that Defendants will argue that such post-termination conduct cannot amount to a breach of contract simply because (in their view) no contract existed at this point. Plaintiff disagrees; but even if she is unable to prevail on a contract theory she will argue that Defendants continued to owe her a fiduciary duty after May 7, 2012 and that their conduct towards her violated that duty.

Plaintiff's contract and fiduciary duty claims also differ as regards the relief requested. Money damages are usually the exclusive remedy for breaches of contract unless shown to be inadequate. Fiduciary duty cases, in contrast, often seek an accounting or other equitable relief. The present case is an example: as a remedy for Defendants' breaches of fiduciary duty, Plaintiff seeks, in addition to an award of damages, an accounting and other equitable relief (such as an injunction requiring Defendants to protect her professional reputation).

In any event it would be premature to dismiss Plaintiff's fiduciary duty claim at this stage of the litigation, since she has not had the opportunity to develop facts in discovery that might more clearly define the context in which the contract claim and the claim for breach of fiduciary duty are not duplicative. The balance of harms favors denying Defendants' motion to dismiss: refusing to dismiss the fiduciary duty claim would impose no harm on Defendants, who will be required to defend other allegedly duplicative claims in any event; but dismissing the fiduciary duty claim would impose potentially significant harm on Plaintiff who would lose the ability to pursue potentially important legal rights. *See Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F.Supp.2d 226, 250-51 (S.D.N.Y. 2011) ("the extent to which Defendants owed

fiduciary duties to Plaintiffs, and then breached those duties, are questions of fact that should not be resolved on a motion to dismiss").

### D. Breach of Contract

Count One of the Second Amended Complaint seeks recovery for breach of contract. Plaintiff has properly pleaded the essential elements of this claim: the existence of a valid contract (Complaint ¶¶ 27-32, 141-142), breach of the contract by the defendant (Complaint ¶¶ 44-46, 55-57, 69, 71, 73, 78, 90, 92, 97, 135, 138, 143), and damages flowing from the breach (Complaint ¶¶ 56, 73, 90, 137-138, 144-145). Defendants do not dispute that Plaintiff has set forth a viable claim for breach of contract, and do not seek either to dismiss this claim for failure to state a claim or to obtain summary judgment in their favor on this issue. Accordingly, for purpose of the present motion, there is no dispute between the parties on this issue.

The heading of the breach of contract count in the Complaint erroneously limits the claim to CGL. As is clear from the substantive paragraphs of the Complaint, however, Plaintiff's breach of contract claim is directed at all Defendants, not only the law firm. Complaint ¶¶ 55, 57, 61, 71, 73, 84, 90, 92-93, 138, 143. Anticipating this clarification, Defendants argue that individual Defendants cannot be held liable on the breach of contract claim because only the partnership was a party to the contract. This argument fails for reasons already explained: the individual Defendants are all either partners in fact or partners by estoppel (p. 3-5, *supra*); and CGL's status as a limited liability partnership does not immunize partners from liability incurred by the partnership (p. 11, *supra*), from liability to one another (p. 11-12, *supra*), and from the consequences of their own conduct (pp. 12-13, *supra*). Accordingly the allegations of the Complaint state a claim for breach of contract against the individual Defendants as well as the law firm.

### E. Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Two of the Amended Complaint seeks recovery for bad faith breach of contract or breach of the covenant of good faith and fair dealing. The Complaint sets forth detailed allegations showing that Defendants failed to act in good faith or to deal fairly with Plaintiff in connection with her work at CGL. Complaint ¶¶ 1, 46, 54-57, 61, 65, 66, 69-72, 73, 78, 79, 80, 83, 84, 86, 87, 90, 92, 95-97, 107, 135, 138, 148-150. These allegations are fully sufficient, under *Twombly* and *Iqbal*, to set forth a plausible claim of bad faith or unfair dealing.

Defendants do not dispute that Plaintiff has stated a claim insofar as this count is based on the covenant of good faith and fair dealing implicit in every contract. They seek to dismiss the claim insofar as it alleges a right to recovery independent of the contract. The Complaint, however, makes clear that Plaintiff does not seek an independent, extra-contractual recovery in this respect. Count Two merely separates out the fact that Plaintiff's theory of breach of contract relies, not only on the contract between the parties as established by written agreement , but also on the legally imposed covenant of good faith and fair dealing – a covenant that can act as a basis for liability even if the defendant has complied with all technical requirements of the underlying contract. *Kapsis v. American Home Mortgage Servicing Inc.*, 923 F.Supp.2d 430 (E.D.N.Y. 2013) (implied covenant of good faith and fair dealing is violated when a party promises commissions or profits and then does not act in good faith to permit such commissions or profits to be earned, thereby depriving the other party of the benefit of the bargain.").

### F. Fraudulent Inducement

Plaintiff alleges that Cuneo fraudulently induced her to take on a position at CGL and to remain in that position rather than seek other work. The "bait" that held out to induce Plaintiff to undertake or refrain from undertaking these actions were the promises that she would be given important substantive responsibilities, that she would not be required to conduct document

review, that she would be allowed and encouraged to develop her own cases and work on them, and that she would be treated with the respect and fair dealing that partners owe to one another. Complaint ¶¶ 27-31, 33-34. Plaintiff alleges that Cuneo and other Defendants never intended to abide by this promise, and that their fraudulent intent was manifested early on when Cuneo limited her work on international antitrust matters, and continued to be demonstrated throughout her tenure at the firm. Complaint ¶¶ 54-57, 61, 65-66, 69 -70, 72, 80-84 75, 80, 84, 86-87, 92, 97.

Pointing only to certain allegations pertinent to this claim but ignoring others,[17] Defendants argue that the Complaint fails the requirement of specific pleading under Federal Rule 9(b). Plaintiff's allegations of fraud, however, are detailed as to time, place, and manner. The matters fraudulently represented – contrary to Defendants' suggestion – are not mere "puffery," but rather had to do with fundamental issues of trust and with specific, objective promises. The gravamen of the fraud was the false promise that Plaintiff would be given responsibilities commensurate with the status of a senior attorney, and would be entitled to develop her own cases. See, e.g., Complaint ¶¶ 27-31.

The claim of fraud in the inducement does not merely overlap the contract claim. Plaintiff's damages from Defendant's breach of contract may be limited under principles of foreseeability that do not apply to fraud claims; she also may be able to obtain punitive damages if she is able to document her claims of fraud. At the same time Plaintiff must establish elements of the fraud claim which are not required in a contract action, most importantly that the Defendants' misstatements were committed knowingly or recklessly.

---

[17] Defendants seek to minimize the factual allegations underlying Plaintiff's fraud-in-the-inducement claim by pointing only to the allegations contained under the particular part of the Complaint where the claim is set forth. However, the claim -- like others – is grounded in all the allegations of the Complaint, not only the ones specifically referenced in this section.

Defendants argue that the claim of fraud in the inducement may not be maintained against Defendants other than Cuneo, since he is the only one presented in the Complaint as making false representations to induce Plaintiff to come to or remain at CGL. However, Cuneo was acting as a representative of the firm, and accordingly his actions are attributable to CGL for purposes of the fraud-in-the-inducement claim. Other Defendants are properly brought in on this claim because they were either partners in fact or partners by estoppel and because CGL's status as an LLP does not immunize them from intra-firm liability.

### G. Unjust Enrichment

The elements of the claim of unjust enrichment are that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

Plaintiff has plausibly alleged violations of each of these elements. During her time at the firm Plaintiff brought numerous cases to CGL and worked thousands of hours in performing her responsibilities, thus conferring significant benefits on the firm. Complaint ¶¶ 49, 51, 52, 62-64, 67, 75, 84, 88-89, 91-92, 95-96. Plaintiff alleges, further, that Defendants have captured the value of these benefits for themselves, thus enriching themselves as compared with their situation if Plaintiff had not performed these services. Complaint ¶¶ 65-66, 70-73, 78, 80, 83-86, 87, 92, 94-97, 135. Finally, Plaintiff alleges that Defendants' enrichment came at her expense and that it would be unjust to allow Defendants to retain this value. Complaint ¶¶ 33-36, 47, 50-52, 55-56, 58-60, 62-63, 67, 77, 86, 93, 95, 106-111, 112-131, 133, 161 162.

Defendants argue that the claim for unjust enrichment cannot survive because it duplicates the claim for breach of contract. They rely on a line of cases holding that an unjust

enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790–91, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012). This line of cases is inapplicable here, because the claim for unjust enrichment does not simply duplicate the contract claims. Plaintiff has suffered several varieties of harm that are cognizable in a claim for unjust enrichment but that may or may not be remediable in a contract action – including the loss of the right to work on cases while at CGL, the loss of business contacts, and harms of lost contacts that occurred after she was squeezed out of the firm. Complaint ¶¶ 137-139, 162.

Plaintiff anticipates that Defendants will contest Plaintiff's right to recover contract damages for these and other elements of harm. Although she will argue that she is entitled to contract damages for these losses, if she is unsuccessful she will claim that Defendants' retention of these and other benefits constitutes unjust enrichment. Because the unjust enrichment and contract claims are not duplicative, it is inappropriate to dismiss the unjust enrichment claim merely because certain facts needed to establish Plaintiff's right to relief on this theory overlap with the facts needed to establish her entitlement on the contract claim.

## H. Unfair Competition

Count Ten of the Complaint asserts a claim of unfair competition against the Defendants. To state a claim for unfair competition, Plaintiff must allege "that the defendants misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 833 N.Y.S.2d 138, 140 (2007). The doctrine "has been broadly described as encompassing 'any form of commercial immorality' or simply as 'endeavoring to reap where [one] has not sown'...; it is taking 'the skill expenditures and labors of a competitor,' ... and 'misappropriat[ing] for the commercial advantage of one person ... a benefit or

'property' right belonging to another'" *Roy Export Co. Establishment v. Columbia Broad. Sys.*, 672 F.2d 1095 (2d Cir. 1982).

Plaintiff has plausibly alleged violations of each of these elements. The Complaint alleges that Defendants misappropriated Plaintiff's hard work, labor, skills, and good will by violating her rights as a partner and expropriating the value of cases which she had worked hard to establish. Defendants accomplished these unfair objectives, *inter alia*, by denying Plaintiff credit for origination of the cases and clients, ousting her out of her cases, deliberately leaving her out of meetings and conferences, giving credit of her work to other attorneys, omitting her name out of court filings, usurping clients Plaintiff had brought to CGL, and squeezing Plaintiff out of the firm. Complaint ¶¶ 61, 65-66, 67-73, 78-81, 84, 85-87, 88-90, 91-93, 97, 189-197. While expropriating Plaintiff's labor and good will, Defendants intimidated, threatened, and discriminated against the Plaintiff based on her nationality, falsely presented her work as their own, and started bogus investigation to squeeze Plaintiff out of the firm. Complaint ¶¶ 99-111, 112-123, 112-136, 176, 183, 184, 195, 196-97.

Defendants do not respond to the substance of these allegations. Instead, they fall back on the same arguments they make with respect to other claims, namely that the claim for unfair competition duplicates the contract claim – and fails for the same reason: there are numerous failures of overlap between the claim for unfair competition and the claim for contract damages, including the facts that unfair or oppressive actions alleged in the compliant may not be remediable under the law of contract, as well as the plethora of allegations in the Complaint regarding Defendants' bad faith – the unlawful threats, intimidation, and discriminatory manner in which Plaintiff was treated.

## V. Genuine Issues of Material Fact Exist as to Each of Plaintiff's Claims

Defendants move for partial summary judgment but never specify exactly what claims or on what grounds they believe there is no genuine issue of material fact or that they are entitled to judgment as a matter of law. Defendants have neither provided the Court with evidence that negates the existence of a material fact as to any of Plaintiff's claims, or pointed to any instance

in which facts alleged or supplied by the Plaintiff are inadequate to establish a genuine issue of material fact. As best Plaintiff can discern, Defendants make no arguments on motion for summary judgment that are not fully encompassed in their motion to dismiss. Accordingly, it is appropriate for this Court to treat Defendants' motion as consisting only as a motion to dismiss and not as a motion for summary judgment.

To the extent a motion for summary judgment is deemed to be presented here, it should be denied. Plaintiff has submitted an Affidavit in Support of her opposition to Defendants' motion which identifies numerous issues of material fact and supplies documentation presently available to Plaintiff in support of her claim. Because Plaintiff has not yet had the opportunity to review any discovery, it would be grossly unfair to award summary judgment against her on any count of the Complaint. In this respect, accordingly, Defendants' motion for summary judgment is premature and should be denied. *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

## VI. Conclusion

For the reasons set forth above, this Court should deny in their entirety Defendants' motion to dismiss under Rule 12(b)(6) and motion for summary judgment.

Respectfully submitted,

Preetpal Grewal
*Pro se*

## AFFIDAVIT OF SERVICE

The undersigned states that, on February 14, 2014, copy of Plaintiff's opposition to Defendants' Rule 12(b) Motion and/or Motion for Summary Judgment with respect to the Second Amended Complaint was submitted to the Pro Se Office for ECF filing, which electronic filing will send notice to R. Michael Smith of Bowe & Jensen, LLC, attorney for the Defendants, 29 W. Susquehanna Avenue, Towson, MD 21204.

Preetpal Grewal (Pro Se)

Bar No. PG 6484

395 South End Avenue, #8P

New York, NY 10280

Phone: (917) 576-9298

Freeman Goodman
395 South 2nd Av #88
NY NY 10023

To The Pro Se Office (For Filing)

USM/5W
SDNY

PRO SE OFFICE
JUN 13 2024