UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

PREETPAL GREWAL,                    :

                 Plaintiff,         :    13 Civ. 6836 (RA)(HBP)

    -against-                       :    OPINION
                                         AND ORDER
JONATHAN W. CUNEO, et al.,          :

                 Defendants.        :

-----------------------------------X

            PITMAN, United States Magistrate Judge:


I.  Introduction


            By notice of motion dated December 24, 2013 (Docket

Item 45) Elizabeth Thomas, appearing pro se, moves to intervene

in this action.  For the reasons set forth below, the motion is

denied without prejudice to Ms. Thomas's right to commence any

action she believes is appropriate and consistent with her

obligations under Fed.R.Civ.P. 11.[1]


--------------------

    [1]Because it is a nondispositive motion, a Magistrate Judge
can rule on a motion to intervene and is not limited to
recommending a disposition.  See Int'l Chem. Corp. v. Nautilus
Ins. Co., No. 09-CV-359S(F), 2010 WL 3070101 at *1 n.1 (W.D.N.Y.
Aug. 3, 2010); Commack Self-Service Kosher Meats, Inc. v. Rubin,
170 F.R.D. 93, 96 (E.D.N.Y. Dec. 9, 1996); United States v.
Certain Real Prop. & Premises Known as 1344 Ridge Road, 751 F.
Supp. 1060, 1061 (E.D.N.Y. 1989).

II.   Facts

        This action arises out of the soured relationship
between plaintiff -- an attorney -- and the law firm at which she
alleges she was a partner.  The Second Amended Complaint (Docket
Item 44) ("Sec. Am. Compl.") asserts the following facts.

        Defendant Cuneo Gilbert & LaDuca LLC ("CGL") is a law
firm operating as a limited liability partnership with offices in
New York City and Washington, D.C. (Sec. Am. Compl. ¶¶ 7, 8).
Plaintiff is an attorney licensed to practice in both India and
New York (Sec. Am. Compl. ¶ 17).

        In 2008, plaintiff, CGL and its principals agreed that
plaintiff would commence employment with CGL (Sec. Am. Compl. ¶¶
27-31).  According to plaintiff, the she was offered what CGL
characterized as the "'standard deal,'" i.e., plaintiff would
receive hourly compensation for "client development activities,"
ten percent of work she originated and twelve percent of her
"lodestar contribution" (Sec. Am. Compl. ¶ 30).  Plaintiff began
working at CGL on June 30, 3008 and was treated as a partner from
the inception of her employment (Sec. Am. Compl. ¶¶ 32-34).  Fee
applications from other CGL partners routinely described plain-
tiff as a partner (Sec. Am. Compl. ¶¶ 36-42).

Plaintiff alleges that at some point in 2008, other partners at CGL struck a deal with an international antitrust attorney, Michael Hausfeld, pursuant to which Hausfeld would refer domestic antitrust work to CGL in return for which CGL would refer antitrust work on behalf of Indian clients to Hausfeld (Sec. Am. Compl. ¶ 45-46).  Plaintiff was not advised of this arrangement at the time, and alleges that one of its effects was to deprive her of the benefits of her business development efforts in India (Sec. Am. Compl. ¶ 46).  Without knowledge of this allegedly secret agreement, plaintiff traveled to India on multiple occasions in 2008 and 2009, partly at her own expense, in an effort to develop business (Sec. Am. Compl. ¶¶ 47-53).  Plaintiff's efforts were fruitful and she succeeded in securing business from several Indian corporations (Sec. Am. Compl. ¶¶ 51-52).

While plaintiff was working at developing Indian clients, the other partners at CGL became disaffected with their relationship with Hausfeld and were no longer interested in referring international antitrust work to him (Sec. Am. Compl. ¶¶ 54-55).  In addition, CGL itself lost interest in representing Indian clients, thereby substantially devaluing plaintiff's client development work (Sec. Am. Compl. ¶¶ 55-56).  CGL also began to question the expense reports plaintiff submitted in

3

connection with her trips to India (Sec. Am. Compl. ¶ 56), refused to assign antitrust work to plaintiff and told plaintiff to develop her own domestic cases (Sec. Am. Compl. ¶ 57).

Plaintiff claims that CGL hired other attorneys with expertise in antitrust with the intention of forcing plaintiff out of such cases (Sec. Am. Compl. ¶ 61).  Work that plaintiff brought to CGL was assigned to other attorneys, and plaintiff was not given credit for developing that business or for the substantive work that she did on business she developed (Sec. Am. Compl. ¶¶ 62-94).  Other attorneys at CGL misappropriated plaintiff's ideas for commencing class actions (Sec. Am. Compl. ¶¶ 95-98).

Plaintiff also alleges that other attorneys at CGL mocked and denigrated her Indian ancestry, and stated that the firm did not "take her seriously" (Sec. Am. Compl. ¶¶ 99-105).

In 2012, CGL terminated plaintiff's employment, alleging that plaintiff had engaged in unethical conduct by ghost writing a pleading for a pro se litigant, Elizabeth Thomas, the proposed intervenor (Sec. Am. Compl. ¶¶ 112-28).

Based on the foregoing, plaintiff has asserted claims against CGL and its members for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, unlawful interference with contractual relations, fraudulent inducement, unlawful threats, violation of

4

the New York Human Rights Law, intentional and negligent inflic-
tion of emotional distress, unfair competition,
disparagement/unlawful interference with prospective clients,
discrimination on the basis of race, color, religion, sex and
national origin in violation of Title VII of the Civil Rights Act
of 1964[2] and RICO violations.

The proposed intervenor, Elizabeth Thomas, is the <u>pro
se</u> litigant with whom plaintiff allegedly consulted.  Although
plaintiff's complaint against the defendants focuses on the
relationship among plaintiff, CGL and its principals, Thomas's
proposed intervenor complaint (Docket Item 43) focuses on the
relationship between Thomas on the one hand and plaintiff and CGL
on the other.  Based on allegedly defective advice plaintiff and
CGL provided to her in connection with an action plaintiff
commenced <u>pro se</u> in the Eastern District of New York entitled
<u>Thomas v. Mort. Elect. Registration Sys., Inc.</u>, CV-11-3656
(JG)(RML), Thomas seeks to assert claims against plaintiff and
CGL for deceit, negligence, breach of fiduciary duty intentional
and negligent infliction of emotional distress (Docket Item 45).

---

[2]Plaintiff has withdrawn her Title VII claim (Docket Item
89).

III.  Analysis

Fed.R.Civ.P. 24 governs intervention and provides, in pertinent part:

**(a) Intervention of Right.**  On timely motion, the court must permit anyone to intervene who:

*     *     *

**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

**(1)** **In General**.  On timely motion, the court may permit anyone to intervene who:

*     *     *

**(B)** has a claim or defense that shares with the main action a common question of law or fact.

*     *     *

**(3)** **Delay or Prejudice**.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Thomas seeks to intervene pursuant to Rule 24(a)(2) or, alternatively pursuant to Rule 24(b)(1)(B).  As explained below, neither sub-section warrants her intervention in this matter.

The Court of Appeals for the Second Circuit has held that intervention as a matter of right pursuant to Rule 24(a)(2) requires an applicant to:  "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000); accord MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006); Greenidge v. Allstate Ins. Co., 82 F. App'x 729, 729-30 (2d Cir. 2003); D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001); Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc., 05-CV-3634 (DLI)(MDG), 2007 WL 749737 at *3 (E.D.N.Y. Mar. 7, 2007); Buxbaum v. Deutsche Bank AG, 216 F.R.D. 72, 76 (S.D.N.Y. 2003) (Koeltl, D.J.).

While a failure to satisfy any one of these four criteria is sufficient for a court to deny a motion to intervene, In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003); Athale v. Sinotech Energy Ltd., 11 Civ. 5831 (AJN), 2013 WL 2145588 at *1 (S.D.N.Y. May 16, 2013) (Nathan, D.J.), "the test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." Tachiona ex rel. Tachiona v.

7

<u>Mugabe</u>, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (Marrero, D.J.),

<u>citing</u> <u>United States v. Hooker Chems. & Plastics Corp.</u>, 749 F.2d

968, 983 (2d Cir. 1984); <u>accord</u> <u>LaSala v. Needham & Co.</u>, 04 Civ.

9237 (SAS), 2006 WL 1206241 at *3 (S.D.N.Y. May 2, 2006)

(Scheindlin, D.J.); <u>Long Island Trucking, Inc. v. Brooks Phar-</u>

<u>macy</u>, 219 F.R.D. 53, 55 (E.D.N.Y. 2003).

"Substantially the same factors [that are applicable to

a motion brought under Fed.R.Civ.P. 24(a)(2)] are considered in

determining whether to grant an application for permissive

intervention pursuant to Fed.R.Civ.P. 24(b)(2)."  <u>In re Bank of</u>

<u>N.Y. Derivative Litig.</u>, <u>supra</u>, 320 F.3d at 300 n.5.

> Permissive intervention pursuant to Rule 24(b) "is
> discretionary with the trial court."  <u>H.L. Hayden Co.</u>
> <u>of N.Y. v. Siemens Med. Sys., Inc.</u>, 797 F.2d 85, 89 (2d
> Cir. 1986).  "In exercising its discretion," the court
> must "consider whether the intervention will unduly
> delay or prejudice the adjudication of the rights of
> the original parties."  <u>Id</u>. (quoting Fed.R.Civ.P.
> 24(b)) (alteration and internal quotation marks omit-
> ted).  "Additional relevant factors include the nature
> and extent of the intervenors' interests, the degree to
> which those interests are adequately represented by
> other parties, and whether parties seeking intervention
> will significantly contribute to full development of
> the underlying factual issues in the suit and to the
> just and equitable adjudication of the legal questions
> presented."  <u>Id</u>. (internal quotation marks omitted).
> <u>See also</u> <u>In re Holocaust Victim Assets Litig.</u>, 225 F.3d
> 191, 202 (2d Cir. 2000) ("A district court may grant a
> motion for permissive intervention if the application
> is timely and if the applicant's claim or defense and
> the main action have a question of law or fact in
> common.  The court must consider whether granting
> permissive intervention will unduly delay or prejudice

> the adjudication of the rights of the existing par-
> ties.") (internal citation and quotation marks omit-
> ted).
>
> . . . "'Reversal of a district court's denial of per-
> missive intervention is a very rare bird indeed, so
> seldom seen as to be considered unique.'" AT&T Corp.
> v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005)
> (quoting United States v. Pitney Bowes, Inc., 25 F.3d
> 66, 73 (2d Cir. 1994)). "The district court's discre-
> tion under Rule 24(b)(2) is very broad. In fact, a
> denial of permissive intervention has virtually never
> been reversed." H.L. Hayden Co., 797 F.2d at 89 (in-
> ternal citation and quotation marks omitted).

Citizens Against Casino Gambling in Erie Cnty. v. Hogen, 417 F.

App'x 49, 50-51 (2d Cir. 2011).

"The applicants' well pleaded allegations must be

accepted as true for purposes of considering a motion to inter-

vene, with no determination made as to the merits of the issues

in dispute." Herman v. New York Metro Area Postal Union, 97 Civ.

6839 (KMW), 1998 WL 214787 at *1 (S.D.N.Y. Apr. 30, 1998) (Wood,

D.J.); accord Fleet Capital Corp. v. Mullins, 03 Civ. 6660

(RJH)(KNF), 2004 WL 548240 at *1 (S.D.N.Y. Mar. 18, 2004) (Hol-

well, D.J.).

The principal issue with respect to Thomas's motion is

whether she has any interest in plaintiff's claims against CGL.

Thomas's motion to intervene describes her purported interest in

several inconsistent ways, some of which are difficult to under-

stand. Specifically, Thomas makes the following allegations:

- Elizabeth Thomas has a direct interest in this case as the real party of interest pursuant to Rule 17 of the Fed. Civ. P., having suffered an injury directly from the [sic] Preetpal Grewal when employed and/or a partner [sic] of the Law Firm of Cuneo Gilbert & LaDuca LLP, the ("Defendant's") [sic], and currently Thomas [sic] interest is not being represented before the court (Thomas's Motion to Intervene and Memorandum in Support of Motion to Intervene, dated Dec. 24, 2013 (Docket Item 45) ("Thomas Memo.") at 2).

- No specific legal or equitable interest need be established.") (internal quotation marks and citations omitted) [sic].  Under the second prong of the test, for an interest to be cognizable, . . . it must be direct, substantial, and legally protectable Thomas [sic] has a protected interest in this case because the grounds for which Plaintiff Grewal alleges to a cause of action [sic] (wrongful termination, failure to successfully maintain her own practice, discrimination, etc.) all arose due to the direct result of the Plaintiff Grewal misconduct and damages to the court, opposing counsel and Thomas for deceit [sic] (Thomas Memo. at 4) (internal quotation marks omitted).

- Thomas plainly has an interest in protecting her privileged and confidential documents and communications that is [sic] protected under the attorney-client privilege (Thomas Memo. at 5).

To the extent Thomas claims she is the real party in interest with respect to plaintiffs claims against CGL, Thomas's argument is frivolous.  Plaintiff's claims arise out of the rights and obligations (if any) plaintiff and CGL owed to each other as a result of plaintiff's work at CGL.  Thomas is a stranger to that relationship.  If Thomas was a client of plaintiff or CGL, plaintiff or CGL may have had duties to Thomas, but those duties, if any, result from an attorney-client relationship

and are independent of the relationship between plaintiff and
CGL.

Thomas's claim that she has an interest in plaintiff's
claims "because the grounds for which Plaintiff Grewal alleges to
a cause of action [sic] (wrongful termination, failure to suc-
cessfully maintain her own practice, discrimination, etc.) all
arose due to the direct result of the Plaintiff Grewal misconduct
and damages to the court, opposing counsel and Thomas for deceit"
[sic] (Thomas Memo. at 4), borders on being incomprehensible.
Even if I construe the foregoing as attempting to claim that
Thomas has an interest in the action because plaintiff claims
that CGL relied on plaintiff's alleged work for Thomas as a
pretext to terminate plaintiff, Thomas still fails to establish
an interest.  According to plaintiff, the reason offered for her
termination was her alleged authorship of Thomas's submissions to
court without disclosure of her de facto role as Thomas's attor-
ney (Sec. Am. Compl. ¶¶ 111-14, 124-31).  Plaintiff's allega-
tions, at most, implicate the issues of whether plaintiff pro-
vided legal advice to Thomas and, perhaps, the extent of that
advice.  Thomas's claims, in contrast, implicate the quality of
that advice.[3]  In short, the outcome of plaintiff's employment-

_____

[3]Plaintiff admits in the Second Amended Complaint that she
(continued...)

related claims against CGL will have no effect on Thomas's misconduct claims against plaintiff and CGL.

Finally, Thomas's assertion that she has an interest in this action based on her right to maintain the confidentiality of her putative attorney-client communications is also without merit. If Thomas were permitted to intervene she would have no attorney-client privilege with respect to her communications with plaintiff and CGL. Thomas's claims against plaintiff and CGL -- essentially claims for legal malpractice -- put Thomas's communications with plaintiff and CGL in issue; Thomas's Complaint of Intervention repeatedly refers to and relies upon purported conversations with plaintiff and CGL (Complaint of Intervention (Docket Item 43) ¶¶ 18-40, 49, 54-56, 66, 68, 69 and 73). Where as here, a party's claim puts the putatively privileged conversations in issue, the attorney-client privilege is waived. In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008); Leviton Mfg. Co. v. Greenberg Traurig LLP, 09 Civ. 8083 (GBD)(THK), 2010 WL 4983183 at *4 (S.D.N.Y. Dec. 6, 2010) (Katz, M.J.); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 727 F. Supp. 2d

---

[3](...continued)
provided some assistance to Thomas (Sec. Am. Compl. ¶¶ 125-26). Thus, there is no possibility that the resolution of plaintiff's claims against CGL could result in a finding that plaintiff provided no assistance to Thomas. Even if such a finding were made, Thomas, as a non-party, would not be bound by it.

256, 271 (S.D.N.Y. 2010) (Leisure, D.J.); see also 22 N.Y.C.R.R.
1200.0, New York Rules of Professional Conduct R. 1.6(b) ("A
lawyer may reveal or use confidential information to the extent
that the lawyer reasonably believes necessary . . . to defend the
lawyer or the lawyer's employees and associates against an
accusation of wrongful conduct . . . ."). There is no reason to
believe that, without Thomas's presence in the action, Plaintiff
or CGL will violate their duty to protect any remaining client
confidences either may have received from Thomas.

          Finally, permitting Thomas to intervene would result in
substantial hardship to plaintiff and CGL. In addition to the
delay that would inevitably result from injecting third-party
malpractice claims into what is essentially an employment dis-
pute, permitting Thomas to intervene would also create a risk of
prejudice to plaintiff, CGL and third parties. As the summary of
plaintiff's claims set forth above demonstrates, some of plain-
tiff's claims raise issues concerning CGL's relationships with
other clients and its business development and compensation
practices, issues that do not have the remotest relationship to
Thomas's claims. If Thomas were permitted to intervene, as a
party, she would, presumptively, have access to all discovery
materials, notwithstanding the lack of connection between the
discovery and her claims. The unnecessary disclosure of CGL's

internal business practices to Thomas would result in prejudice to CGL.

Thus, because Thomas has no interest in plaintiff's claims against CGL and permitting her to intervene would delay the resolution of plaintiff's claims and would result in preju-dice to CGL, Thomas's motion to intervene is denied.

As fall backs, Thomas argues that she should be made a party because she is the real party in interest and because joinder is appropriate pursuant Fed.R.Civ.P 19.

Thomas's argument that she is the real party in inter-est is resolved at pages 9-12 above.

Thomas's contention that she should be joined pursuant to Rule 19 is without merit.  Rule 19 provides, in pertinent part:

> **(a) Persons Required to Be Joined if Feasible.**
>
> > **(1)  Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdic-tion must be joined as a party if:
> >
> > > **(A)**  in that person's absence, the court cannot accord complete relief among existing parties; or
> > >
> > > **(B)**  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

14

      **(i)** as a practical matter impair or impede the person's ability to protect the interest; or

      **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Neither plaintiff nor CGL has asserted any claim against Thomas or any claim against property in which Thomas has an interest.  Thus, Thomas's presence in the action is not necessary for plaintiff and CGL to obtain complete relief.  As discussed above, Thomas has no interest in plaintiff's claims against CGL.  Thus, joinder under Rule 19 is also inappropriate.

Because Thomas has not demonstrated any legal basis for joining this action and because her joinder would prejudice the existing parties, Thomas's motion to intervene is denied.

## IV.  Conclusion

Accordingly, for all the foregoing reason, the motion of Elizabeth Thomas to intervene in this matter (Docket Item 45) is denied in all respects, without prejudice to Ms. Thomas's right to commence any action she believes is appropriate and consistent with her obligations under Fed.R.Civ.P. 11.  In addition, because Thomas is not a party to this action, her

motion for a Rule 502 Order (Docket Item 86) is also denied for

lack of standing.

Dated:  New York, New York
        May 20, 2014

                                    SO ORDERED


                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies transmitted to:

Preetpal Grewal, Esq.
Apt. 8-P
395 South End Avenue
New York, New York  10280

Ralph M. Smith, Esq.
Bowie & Jensen, LLC
29 West Susquehanna Avenue
Ellicott City, Maryland  21204

Charles J. LaDuca, Esq.
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Bethesda, D.C.  20814

Ms. Elizabeth Thomas
8202 Terra Valley Lane
Tomball, Texas  77375