```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/25/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PREETPAL GREWAL,

                Plaintiff,

v.

JONATHAN W. CUNEO, *et al.*,

                Defendants.

No. 13-CV-6836 (RA)

<u>OPINION AND ORDER</u>

RONNIE ABRAMS, United States District Judge:

    Plaintiff Preetpal Grewal, an attorney proceeding *pro se*, initiated this action on September 25, 2013 against her former employer, Cuneo Gilbert & LaDuca LLP ("CGL") and nine individual Defendants who are partners of or employed by CGL (collectively, the "Individual Defendants").[1] By Order dated July 7, 2015, the Court granted in part and denied in part Defendants' Motion to Dismiss, dismissing Plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and state-law claims for breach of fiduciary duty, unjust enrichment, unfair competition, fraudulent inducement, and discriminatory termination under New York State and City Human Rights Law. The Court also determined that none of Plaintiff's claims were properly asserted against the Individual Defendants, and thereby dismissed them from the action. On July 21, 2015, Defendant CGL answered Plaintiff's Second Amended Complaint (the "Complaint"), asserting five affirmative defenses, and filed counterclaims. Now before the Court are Plaintiff's Motion for Reconsideration of the July 7 Order and Plaintiff's Motion to Dismiss Defendant's Counterclaims and Strike Defendant's Affirmative Defenses. For the reasons that follow,

---

[1] The Individual Defendants are Michael Flannery, Robert Cynkar, Sandra Cuneo, Daniel Cohen, Matthew Miller, Joel Davidow, Jonathan Cuneo, Charles LaDuca, and Pamela Gilbert.

Plaintiff's Motion for Reconsideration is denied, Plaintiff's Motion to Strike Defendant's Affirmative Defenses is granted in part and denied in part, and Plaintiff's Motion to Dismiss Defendant's Counterclaims is granted.

## DISCUSSION

### I. Motion for Reconsideration

For the purposes of the Motion for Reconsideration, the Court assumes familiarity with the underlying facts and procedural history as set forth in the July 7 Order.

#### A. Standard of Review

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). Accordingly, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). To succeed, the moving party must "identif[y] 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). In the case of new evidence, the proponent must demonstrate that the evidence could not have been discovered "with reasonable diligence" prior to the court's ruling. Fed. R. Civ. P. 60(b)(2). "A motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Persh v. Petersen*, No. 15-CV-1414 (LGS), 2015 WL 6736189, at *2 (S.D.N.Y. Oct. 30, 2015) (quoting *Analytical Surveys, Inc. v. Tonga*

*Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). In short, "[a] party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Childers v. N.Y. Presbyterian Hosp.*, 36 F. Supp. 3d 292, 316 (S.D.N.Y. 2014).

Plaintiff has not met her burden here. With respect to her Motion for Reconsideration of the Court's dismissal of her breach of fiduciary duty, unfair competition, and civil RICO claims, Plaintiff merely repeats the same arguments the Court previously rejected without pointing to new evidence or controlling law. Because a motion for reconsideration is not a "vehicle to relitigate" issues already decided, Plaintiff's motion fails as to these claims. *See Persch,* 2015 WL 6736189, at *2. As to the remaining claims, Plaintiff argues that (1) there is newly discovered evidence that demonstrates that personal jurisdiction is proper over the Flannery Defendants;[2] (2) the Court did not address her argument that the Individual Defendants are "necessary parties" to this action; and (3) the Court did not consider material facts that show Defendants never intended to abide by their promises and thereby fraudulently induced Plaintiff to join CGL. For the following reasons, Plaintiff has failed to provide the Court a sufficient basis to reconsider its ruling.

## B. Personal Jurisdiction over Flannery Defendants

In its July 7 Order, the Court held that it lacked personal jurisdiction over all the Flannery Defendants other than Joel Davidow. The Court reasoned that, even if Plaintiff could establish that personal jurisdiction over the CGL partnership established jurisdiction over all partners as a matter of New York law, Plaintiff had failed to plausibly allege that the Flannery Defendants were partners by estoppel or otherwise. July 7 Order 10–11. Plaintiff now argues that personal jurisdiction is proper, citing purportedly new evidence establishing that the Flannery Defendants

---

[2] The Flannery Defendants are Michael Flannery, Robert Cynkar, Sandra Cuneo, Daniel Cohen, Matthew Miller, and Joel Davidow.

3

"knowingly allowed [themselves] to be billed as a partner in numerous fee applications filed under penalty of perjury." Pl.'s Mot. Recon. 10 (internal citation and quotation marks omitted). But Plaintiff does not argue that the evidence could not have been discovered with reasonable diligence prior to the Court's July 7 Order; instead, she states only that she "recently found" an April 2011 email from Joel Davidow and that a February 14, 2014 fee application filed in *In re. JP Morgan Chase Mortgage Modification Litigation* "was not available to Plaintiff until recently." Pl.'s Mot. Recon. 10–11. The fact that Plaintiff "recently learned of this information does not, however, make it 'new evidence.'" *Tatum v. City of New York*, No. 06-CV-4290 (BSJ), 2009 WL 976840, at *2 (S.D.N.Y. April 9, 2009). Plaintiff therefore fails to make the requisite showing that this evidence could not have been discovered with reasonable diligence prior to the Court's July 7 Order.

In any event, even if the Court were to consider this "new evidence," it does not provide a basis for reconsideration. Nothing in the fee application in *In re. JP Morgan Chase Mortgage Litigation*—in which associate Alexandra Warren is billed at a higher rate than named partner Pamela Gilbert and the Flannery Defendants are listed as partners—and an email from Joel Davidow describing himself as a CGL partner, would change the Court's ruling that "[b]ecause Plaintiff has not alleged that she relied on representations that they were partners, the Flannery Defendants are not partners by estoppel under District of Columbia law." July 7 Order 10–11. Plaintiff also continues to confuse the job title of partner at CGL with the legal status of a partner under District of Columbia ("D.C.") partnership law. In sum, Plaintiff has provided no basis for the Court to reconsider its ruling that it cannot exercise personal jurisdiction over the Flannery Defendants with the exception of Davidow.

### C. Personal Liability of Individual Defendants

Plaintiff next argues that it was improper to dismiss the Individual Defendants, namely, the Cuneo Defendants[3] and Flannery Defendants. Specifically, she argues that, under D.C. partnership law, these parties are individually liable for her state-law and tort claims because they were CGL partners, and she may thus proceed against them individually.[4]

Plaintiff's argument fails as to the Flannery Defendants because, as discussed above, personal jurisdiction does not lie. As to the Cuneo Defendants, who are by contrast CGL partners, Plaintiff again fails to establish that they could be personally liable under D.C. partnership law.

The D.C. Limited Liability Partnership Act generally shields partners from personal liability for obligations of the partnership, providing:

> An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, shall be solely the debt, obligation, or other liability of the partnership. A partner shall not be personally liable, directly or indirectly, by way of contribution or otherwise, for such a debt, obligation, or other liability solely by reason of being or so acting as a partner.

D.C. Code § 29–603.06(c).[5] Although there is an exception that permits actions by partners against the partnership or other partners, this exception does not apply here because, as the Court previously held, Plaintiff has failed to plausibly allege that she was a CGL partner as a matter of D.C. partnership law. July 7 Order 15–17.

Plaintiff argues that the Cuneo Defendants are nevertheless personally liable based on additional exceptions to the partnership liability rule. Namely, she contends that they are liable because (1) "partners in a limited liability partnership are not protected as individuals from liability

---

[3] The Cuneo Defendants are Jonathan Cuneo, Charles LaDuca, and Pamela Gilbert.
[4] Although Plaintiff argues that the "Individual Defendants are necessary parties to this action," Pl.'s Mot. Recon. 11, in substance, Plaintiff's argument appears not to be that they are indispensable under Rule 19, but that she should be able to bring suit against these parties as individuals.
[5] As CGL is a partnership organized under D.C. law, D.C. partnership law applies to the question of partnership liability.

incurred by the partnership if the assets of the partnership are insufficient to satisfy the liability" and/or (2) partners who induce a breach of contract for their own benefit, as distinct from that of the partnership, are liable for such breaches. Pl.'s Mot. Recon. 11–12. In support of these assertions, Plaintiff cites only to cases interpreting New York partnership law, arguing that New York and D.C. partnership law mirror each other in this regard. Plaintiff does not provide persuasive support, however, for the contention that, even if these exceptions did apply here, D.C. partnership law recognizes them.[6] In any event, the New York cases on which Plaintiff relies do not support the claim that the Cuneo Defendants are individually liable. In *United States v. 175 Inwood Associates*, LLP, for example, the court held that general partners of a limited liability partnership—as distinguished from the Cuneo Defendants who are limited liability partners— may be personally liable to persons other than partners if the entity lacks the financial resources to satisfy its liability to plaintiff. 330 F. Supp. 2d 213, 224 (E.D.N.Y. 2004). But Plaintiff has not alleged that CGL is not able to satisfy a judgment against it. Plaintiff's reliance on *The Savage Is Loose Co. v. United Artists Theater Circuit, Inc.*, 413 F. Supp. 555, 560 (S.D.N.Y. 1976), is similarly inapt. There, the court found that a general partner could be liable for inducing a breach of contract "for ulterior purposes wholly divorced from the legitimate interests of the plaintiff Company." *Id.* Plaintiff has failed to plausibly allege that, even if this principle did apply to limited partners governed by D.C. partnership law, that the Cuneo Defendants acted for their own

---

[6] In her opposition to Defendants' Motion to Dismiss, Plaintiff cites *Queen v. Schultz*, 888 F. Supp. 2d 145 (D.D.C. 2012), *aff'd in part, rev'd in part and remanded*, 747 F3d. 879 (D.C. Cir. 2014), and *Dupree v. Walker*, No. 84-CV-1677, 1988 WL 112157 (D.D.C. Oct. 13, 1988), for the proposition that "[c]ourts in the District of Columbia look for guidance to the partnership law of New York State." Pl.'s Opp. Mot. Dismiss 11 n.5. In *Queen*, the court merely found, for the purposes of its choice-of-law analysis, that New York and D.C. law do not conflict regarding the formation of a partnership, 888 F. Supp. 2d at 165, and in *Dupree*, the court looked to New York partnership law to hold that, where a limited partner seeks to enforce rights against the partnership, there must be complete diversity among the limited and general partners for diversity jurisdiction to attach, 1988 WL 112157, at *5–4. It does not follow that that D.C. law recognizes these exceptions to the rule that partners are insulated from liability for claims arising from the partnership.

benefit "wholly divorced" from that of the partnership. Plaintiff thus provides no support for her claim that the Cuneo Defendants could be personally liable for these claims.

### D. Fraudulent Inducement

Plaintiff next argues that the Court "has not taken into account material facts[,] . . . which establish that the Defendants never intended to . . . let Plaintiff establish her career at the firm." Pl's Mot. Recon. 16. Plaintiff points to Jonathan Cuneo's decision to limit her international antitrust work early in her employment, the manner in which Defendants ousted her from the firm, and the threats Defendants made against her, as well as Defendant's purported misappropriation of her work and clients as evidence that Defendants never intended to abide by the promises that induced her to join the firm. Pl.'s Mot. Recon. 15–16.

As an initial matter, in the July 7 Order, the Court did indeed review the various ways Plaintiff alleged that Defendants expropriated her work, but nonetheless concluded that they were insufficient to establish that Defendants never intended to deliver on their promises. July 7 Order 24–25. As to the remaining allegations, Plaintiff points to no fact that "might reasonably be expected to alter" the Court's conclusion. *Shrader*, 70 F.3d at 257. As the Court explained at length in its July 7 Order, the standard to plead fraudulent inducement claims is a strict one, *see* Fed. R. Civ. P. 9(b), requiring the Plaintiff to plead facts that "give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (alteration in original). None of the events that allegedly took place after Plaintiff was hired give rise to the inference that any promises were false when made.[7]

---

[7] Plaintiff also requests that the Court clarify whether the parties will be able to address the appropriate measure of damages at a later point. Any ruling on the damages available here would be premature at this time.

## II. Plaintiff's Motion to Strike CGL's Affirmative Defenses

Plaintiff moves to strike all five of Defendant CGL's affirmative defenses. Federal Rule of Civil Procedure 12(f) provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike affirmative defenses are 'generally disfavored.'" *Walsh v. City of New York*, 585 F. Supp. 2d 555, 557 (S.D.N.Y. 2008) (citing *Simon v. Mfrs. Hanover Tr. Co.*, 849 F. Supp. 880, 882 (S.D.N.Y. 1994)). Accordingly, "[t]he standard to prevail on a motion to strike is demanding," requiring that the moving party demonstrate that (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; and (3) the party would be prejudiced by the inclusion of the defense. *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014) (internal citations and quotation marks omitted).

The motion is denied insofar as it seeks dismissal of the first, second, third, and fifth affirmative defenses. Plaintiff has failed to show that these defenses would cause her prejudice, and the Court is persuaded that there is sufficient overlap between CGL's defenses and Plaintiff's affirmative claims that there will be no need for additional discovery. *See Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, No. 11-CV-1638 (CM), 2012 WL 612358, at *15–16 (S.D.N.Y. Feb. 23, 2012). As to the fourth affirmative defense, alleging Plaintiff fails to state a claim for hostile work environment, this claim is dismissed in light of the Court's July 7 Order, which held that Plaintiff had stated a claim. *See F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) ("An affirmative defense which previously has been rejected on a defendant's motion to dismiss is thereupon insufficient as a matter of law and must be stricken.").

### III. Plaintiff's Motion to Dismiss CGL's Counterclaims

Plaintiff also moves to dismiss CGL's counterclaims for breach of contract, breach of fiduciary duty, and declaratory judgment. Her motion is granted.

### A. Relevant Facts

Defendant CGL asserts the following facts in support of its counterclaims for breach of contract, breach of the duty of loyalty and fiduciary duty, and declaratory judgment. Plaintiff worked as an attorney at CGL from June 2008 through May 9, 2012, and, as a part of her employment contract, she was obligated to comply with the firm's policies and procedures regarding attendance, performance of work in a timely and professional manner, acceptance and representation of clients, and cooperation with the firm's other attorneys. Countercl. ¶¶ 6–8. According to CGL, Plaintiff failed to comply with these regulations, disappearing from work for long periods of time without notice or permission, submitting work assignments late, and failing to cooperate with the firm's attorneys. *Id.* ¶ 10. CGL also alleges that Plaintiff made disparaging remarks to a potential client and other CGL attorneys about the firm and its founder, Jonathan Cuneo, including that Cuneo was incompetent and always lost his cases. *Id.* ¶¶ 23–24.

CGL further alleges that from July 2011 to May 2, 2012, "unbeknownst to CGL" Plaintiff provided legal advice to Elizabeth Thomas, a *pro se* litigant in a case before Judge Gleeson in the United States Court for the Eastern District of New York. *Id.* ¶¶ 11–14. CGL avers that the firm had not authorized her to represent Thomas, but instead had "expressly instructed [Plaintiff] to refrain from providing any such assistance." *Id.* ¶¶ 14–15. On May 4, 2012, Thomas told CGL that Plaintiff had been providing legal advice to her and "ghostwriting" her pleadings. *Id.* ¶ 13. In response, CGL retained Michael Ross, a member of the New York Bar with expertise in the New York Code of Professional Responsibility, to conduct an investigation of Plaintiff's involvement

9

with Thomas. *Id.* ¶ 16. The firm expended $63,000 to conduct the investigation, which culminated in a report submitted to Judge Gleeson on June 22, 2012. *Id.* ¶¶ 17–18. On April 2, 2013 Thomas threatened to file suit against CGL and Plaintiff, and did so on December 16, 2013 for claims based, in part, on Plaintiff's actions while providing Thomas legal assistance. *Id.* ¶¶ 29–30. CGL was forced to expend time and resources as a result of Plaintiff's purported unauthorized involvement with Thomas. *Id.* ¶¶ 31–32.

After Plaintiff resigned from the firm on May 9, 2012, CGL alleges she refused to comply with its requests that she return client files and lied about possessing such files. *Id.* ¶ 22. Plaintiff also purportedly refused to provide notice to the New York Office of Court Administration that she was no longer affiliated with CGL. *Id.* ¶ 20. CGL also alleges that, in about September 2011, while still an attorney at CGL, Plaintiff agreed to provide legal service to a couple, Martin J. Bowes and Marie V. Bowes ("the Bowes"), without the firm's knowledge or authorization. *Id.* ¶ 25. CGL learned of this only when the Bowes called the firm in April 2013 to express their dissatisfaction with Plaintiff's legal services and to demand the return of their documents. *Id.* ¶¶ 25–29.

### B. Standard of Review

A motion to dismiss counterclaims pursuant to Rule 12(b)(6) is decided under the same standard as that of a motion to dismiss the claims of a complaint. *See MTV Networks v. Curry*, 867 F. Supp. 202, 203 (S.D.N.Y. 1994); *Schatt v. Curtis Management Group, Inc.*, 764 F. Supp. 902, 915 (S.D.N.Y. 1991). A counterclaim need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" so as to give the opposing party fair notice of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a counterclaim must do more than offer "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A

court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009). "Consideration is limited to the factual allegations in the Answer, the Counterclaims, and those documents attached as exhibits or incorporated by reference." *Gortat v. Capala Bros., Inc.,* 585 F. Supp. 2d 372, 375 (E.D.N.Y. 2008) (citing *Faconti v. Potter,* 242 F. App'x. 775, 777 (2d Cir. 2007)), *aff'd sub nom., Gortat v. Capala Bros., Inc.,* 568 F. App'x 78 (2d Cir. 2014).

### C. Judicial Estoppel

Plaintiff first argues that CGL's counterclaims should be dismissed under the doctrine of judicial estoppel, which is aimed at preventing litigants from pursuing contradictory positions in different legal proceedings. Specifically, Plaintiff contends that because Defendants declared under penalty of perjury that Plaintiff was a CGL partner in the context of declarations for attorneys' fees, Defendants are now estopped from contradicting this position by arguing that Plaintiff was never a partner.

"In order for judicial estoppel to be invoked, (1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter." *Peralta v. Vasquez,* 467 F.3d 98, 105 (2d Cir. 2006). The first element requires "a true inconsistency between the statements in the two proceedings." *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72–73 (2d Cir. 1997). The Second Circuit has thus "limit[ed] the doctrine of judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005).

As an initial matter, Plaintiff fails to explain exactly how judicial estoppel would bar CGL's counterclaims. In any event, judicial estoppel does not attach here. "[A] court must carefully

consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." *Rodal v. Anesthesia Gp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004). Defendant's representation that Plaintiff held the title of partner at CGL for the purposes of fee applications does not contradict its current position that she was not an equity partner and, therefore, as a legal matter, not a partner under D.C. partnership law. Defendant is therefore not estopped from arguing that Plaintiff was not a CGL equity partner.

### D. First Counterclaim: Breach of Contract

Plaintiff argues that CGL's breach of contract claim fails to state a claim for relief. The Court agrees. "Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Berman v. Sugo LLC,* 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998)). [8] A party need not plead each element individually, but the pleadings must allege sufficient facts to show that a contract existed. *See Ostrolenk Faber LLP v. Unigene Labs., Inc.*, No. 12-CIV-3991 (HB), 2012 WL 3114742, at *2 (S.D.N.Y. Aug. 1, 2012).

Plaintiff argues that New York Labor Law Section 193 ("Section 193") bars CGL's breach of contract counterclaim. Section 193 prohibits employers from making wage deductions based on an employee's substandard job performance. New York courts have construed this provision to preclude employers from pursuing damages based on an employee's negligence or poor job performance, reasoning that, although such claims are "not an obvious example of attempted wage deductions[,] . . . if such claims are not treated as such, the goal of § 193, which is to afford strong

---

[8] As in the July 7 Order, the Court will apply New York law to Plaintiff's state-law contract and tort claims based on the parties' reliance on New York law. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

protection of the wages of employees, could easily be circumvented." *Cohen v. Stephen Wise Free Synagogue*, No. 95-CV-1659 (PKL), 1996 WL 159096, at *4 (S.D.N.Y. Apr. 4, 1996); *accord Farricker v. Penson Dev., Inc.*, No. 07-CV-11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) ("an employer cannot recover based on a lack of performance"); *Burke v. Steinmann*, No. 03-CV-1390 (GEL), 2004 WL 1117891, at *6 (S.D.N.Y. May 18, 2004) ("under New York law employers may not assert a claim for damages against an employee for the employee's alleged negligent acts, or sue employees for lost profits caused by alleged poor performance"); *Guepet v. Int'l Tao Sys., Inc.*, 443 N.Y.S.2d 321, 322–23 (N.Y. Sup. Ct. 1981) ("To allow the defendant [employer] the right to recover [damages] based upon plaintiff's alleged lack of performance would be permitting defendant to do indirectly and retroactively that which the law specifically prohibits it from doing directly.").

CGL alleges that Plaintiff did not: "(a) meet the firm's attendance expectations; (b) perform work in a timely and professional manner; (c) comply with the firm's procedures regarding the acceptance and representation of clients; (d) cooperate with the firm's attorneys; and (e) [comply with] CGL's requests to provide all documents which contained information regarding Thomas and CGL's clients and potential clients." Countercl. ¶ 34. Ultimately, these allegations amount to little more than claims that Plaintiff performed her job responsibilities below the expected standard, and are therefore foreclosed by Section 193. *See Burke*, 2004 WL 1117891, at *6 ("employers may not recover from an employee for mismanagement absent a finding of a breach of the duty of good faith and loyalty"). Defendant points to no case where a court upheld a breach of contract claim based on analogous allegations. Defendant's breach of contract counterclaim is thus dismissed.[9]

---

[9] Nor can CGL circumvent Section 193 by alleging that this conduct violates the implied covenant of good faith and fair dealing.

### E. Second Counterclaim: Breach of Duty of Loyalty and Fiduciary Duty

Plaintiff next seeks to dismiss CGL's second counterclaim for breach of fiduciary duty and duty of loyalty on the grounds that the alleged misconduct does not state a claim for breach of these duties.[10] "To succeed on a claim for breach of fiduciary duty under New York law, a plaintiff must demonstrate the existence of a fiduciary relationship between the parties and a breach of that duty by the defendant." *Fagan v. First Sec. Invs., Inc.*, No. 04-CV-1021 (LTS), 2006 WL 2671044, at *4 (S.D.N.Y. Sept. 15, 2006). Under New York law's faithless servant doctrine, an employee owes a duty of good faith and loyalty to an employer which obligates him "to be loyal to his employer" and prohibits him "from acting in any manner inconsistent with his agency or trust." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Western Elec. Co. v. Brenner*, 360 N.E.2d 1091 (N.Y. 1977)) (internal quotation marks omitted). "The duty of loyalty 'has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks.'" *Farricker v. Penson Dev., Inc.*, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) (quoting *Veritas Capital Management L.L.C. v. Campbell*, 08-CV650058, 2008 WL 5491146, at *10–11 (N.Y. Sup. Ct. 2008); *accord Westwood Chem. Co. v. Kulick*, 570 F. Supp. 1032, 1040 (S.D.N.Y. 1983).

CGL's claim that that Plaintiff violated her duties by (1) surreptitiously representing Thomas without CGL's authorization; (2) representing the Bowes without CGL's authorization and doing so ineffectively; (3) disparaging Cuneo and CGL to Thomas and other members of the firm; (4) ignoring CGL's requests for documents in Plaintiff's possession related to Thomas and

---

[10] In the context of a motion to dismiss, the Court will not consider Plaintiff's arguments regarding the truth of the allegations as it is obligated to "accept all factual allegations as true." *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (internal citations omitted).

the firm's clients and potential clients; (5) lying to the firm about her possession of the same; and (6) preparing to take CGL's clients with her when she left the firm. None of these allegations states a claim for breach of fiduciary duty or duty of loyalty. The alleged violations will be considered in turn.

CGL claims that Plaintiff represented Thomas and the Bowes without the firm's authorization—unaccompanied by any facts that she benefitted from these representations to the detriment of the firm—is insufficient as a matter of law to state a claim for breach of fiduciary duty or the duty of loyalty. In *Farricker v. Penson Development, Inc.*, the court was faced with a similar set of facts. 2010 WL 845983, at *2. Presented with an employer who alleged that its employee had promised two real estate brokers, without authorization, that the employer would pay for their services, Judge Batts held that such *ultra vires* acts, without evidence of self-dealing, did not state a claim for a breach of good faith and loyalty. *Id.* The same deficiency exists here. CGL alleges no facts establishing that Plaintiff misappropriated the firm's time or resources, that she diverted profits to herself, that she worked for a competing law firm, or that she solicited clients to start a competing business. *Cf. Phansalker*, 344 F.3d at 200 (finding employee a faithless servant where he failed to disclose and retained for himself interests belonging to his employer); *Carco Group, Inc. v. Maconachy*, 383 F. App'x. 73, 76 (2d Cir. 2010) (finding defendant a faithless servant "because of his self-dealing"); *Penton Learning Sys., LLC v. Def. Strategies Inst. Grp.*, 2012-CV-651791, 2014 N.Y. Misc. LEXIS 3622, at *54–56 (N.Y. Sup. Ct. July 28, 2014) (finding breach of the duty of loyalty where Defendants "were performing duties for a competing company" while still in Plaintiff's employ). Lacking allegations of any act of similar disloyalty, these claims must fail.

CGL also fails to state a claim with respect to its allegations that Plaintiff disparaged Cuneo and CGL to Thomas and other members of the firm, ignored CGL's requests for documents related to Thomas and the firm's clients and potential clients, and lied to the firm about her possession of such documents. While it does allege insubordination and dishonesty, CGL fails to allege any element of self-dealing on Plaintiff's part. Such claims are thus not actionable under the faithless servant doctrine. *See Schwartz v. Leonard*, 526 N.Y.S.2d 506, 508 (N.Y. App. Div. 1988) (finding allegation that defendant took client files and made secret plans to move to new office space "insufficient . . . to show that defendant neglected the files during his period of employment or that he was furthering his own interest at the expense of the plaintiff").

Defendant's remaining claim that Plaintiff was a faithless servant by "preparing to take CGL's clients with her when she left the firm" also fails. Countercl. ¶ 37. The only support for this allegation is that Thomas purportedly told CGL that Plaintiff had such plans. *Id.* ¶ 23. New York courts, however, have found that the taking of "preliminary steps to enter into a competitive business involved no breach of fidelity so long as . . . Plaintiff never lessened his work on behalf of defendant and never misappropriated to his own use business secrets." *Feiger v. Iral Jewlery, Ltd.*, 363 N.E.2d 350, 351 (N.Y. 1977); *accord Bon Temps Agency v. Greenfield*, 622 N.Y.S.2d 709 (N.Y. App. Div 1995) ("mere taking of preliminary steps to enter into a competitive business would not be a breach of fidelity unless or until [defendant] lessened her work on behalf of plaintiff or misused plaintiff's business secrets); *Mal Dunn Assoc. v. Kranjac*, 535 N.Y.S.2d 430, 431 (N.Y. App. Div. 1988) ("preliminary inquiries" to employer's clients did not breach duty). Without alleging any facts evidencing that Plaintiff took a material step to steal the firm's clients, this claim cannot survive.

F. **Third Counterclaim: Declaratory Judgment**

Lastly, Plaintiff moves to dismiss CGL's third counterclaim for declaratory judgment in which Defendant seeks a judgment that it "is not obligated to pay [Plaintiff] any additional incentive or other compensation." Countercl. ¶ 44.

In order to decide whether to entertain an action for declaratory judgment, courts consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969)). "[W]here a declaratory judgment claim is redundant of a primary claim raised by a party to a lawsuit, it is properly dismissed as duplicative." *Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, No. 13-CV-3093 (PKC), 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014). "A district court has broad discretion to decide whether to render a declaratory judgment." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993).

CGL has provided no basis for why a declaratory judgment would serve a useful purpose in clarifying a legal issue or would offer the parties relief from uncertainty. Its only argument is that "the damages sought by [Plaintiff] include a share of attorneys' fee awards which may not be made and collected before this litigation concludes." Defs.' Opp. Mot. Dismiss Countercl. 13. But Defendant's equivocal justification for declaratory judgment does not explain why the Court's judgment on Plaintiff's claims will not resolve Plaintiff's entitlement to such fees on a prospective basis. *See, e.g., Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'"); *Intellectual Capital Partner v. Inst. Credit Partners LLC*, No. 08-CV-10580 (DC), 2009 WL

1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim"). Plaintiff's declaratory judgment counterclaim is thus dismissed.

## CONCLUSION

Plaintiff's Motion for Reconsideration is denied. Plaintiff's Motion to Strike Defendant's Affirmative Defenses is denied as to the first, second, third, and fifth affirmative defenses, and granted as to the fourth. Plaintiff's Motion to Dismiss Defendant's Counterclaims is granted in its entirety. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 114 and 121.

Plaintiff shall have until February 1, 2016 to amend her Complaint in accordance with the July 7 Order. Also by February 1, the parties are to notify the Court if they object to this case being referred to Judge Pitman for a settlement conference.

SO ORDERED.

Dated:     January 25, 2016
           New York, New York

Ronnie Abrams
United States District Judge